# United States Court of Appeals
## For the First Circuit

No. 16-2100

BERKSHIRE ENVIRONMENTAL ACTION TEAM, INC.; JEAN ATWATER-
WILLIAMS; RONALD M. BERNARD; CATHY KRISTOFFERSON; CHERYL D.
ROSE; IRVINE SOBELMAN; PAULA L. TERRASI; SUSAN K. THEBERGE;
ROSEMARY WESSEL; KATHRYN R. EISEMAN; ARIEL S. ELAN; ELLIOT
FRATKIN; MARTHA A. NATHAN; KENNETH HARTLAGE; RONALD R. COLER;
JANE WINN; HEATHER MORRICAL,

Petitioners,

v.

TENNESSEE GAS PIPELINE COMPANY, LLC; MASSACHUSETTS DEPARTMENT OF
ENVIRONMENTAL PROTECTION,

Respondents.

PETITION FOR REVIEW OF AN ORDER OF
THE MASSACHUSETTS DEPARTMENT OF ENVIRONMENTAL PROTECTION

Before

Kayatta, Circuit Judge,
Souter, Associate Justice,[*]
and Selya, Circuit Judge.

Richard A. Kanoff, with whom Susan E. Stenger, Saqib Hossain,
and Burns & Levinson LLP were on brief, for petitioners.
Matthew Ireland, Assistant Attorney General, Environmental
Protection Division, with whom Seth Schofield, Assistant Attorney
General and Senior Appellate Counsel, Energy and Environment
Bureau, Office of the Attorney General of Massachusetts, Maura
Healey, Attorney General of Massachusetts, and Turner Smith,

_____

[*] Hon. David H. Souter, Associate Justice (Ret.) of the
Supreme Court of the United States, sitting by designation.

Assistant Attorney General, Environmental Protection Division, were on brief, for Massachusetts Department of Environmental Protection.

 James L. Messenger, with whom Brian J. Wall, Gordon Rees Scully Mansukhani, LLP, J. Curtis Moffatt, and Mosby G. Perrow were on brief, for Tennessee Gas Pipeline Company, LLC.

———————————

March 15, 2017

———————————

**KAYATTA**, <u>Circuit Judge</u>.  In this unusual petition for review arising out of a state administrative proceeding, the petitioners themselves argue that we lack jurisdiction to hear their complaints about what has transpired to date before the state agency.  Because the agency itself has not yet finally acted on the matter that is before it as is required to invoke our jurisdiction under 15 U.S.C. § 717r(d)(1), we agree and dismiss the petition.

## I.  Background

The Natural Gas Act ("NGA") requires a natural gas company to obtain from the Federal Energy Regulatory Commission ("FERC") a certificate of public convenience and necessity before it may construct new natural gas transportation facilities or expand existing ones.  15 U.S.C. § 717f(c)(1)(A).  FERC is responsible for coordinating all federal authorizations applicable to the process.  <u>Id.</u> § 717n(b)(1).  The NGA also expressly preserves the rights of states under the Coastal Zone Management Act of 1972, 16 U.S.C. §§ 1451–1466; the Clean Air Act, 42 U.S.C. §§ 7401–7671q; and the Clean Water Act ("CWA"), 33 U.S.C. §§ 1251–1388.  <u>See</u> 15 U.S.C. § 717b(d).  Under the CWA, any applicant for a federal license to construct or operate facilities that may result in discharge into navigable waters must "provide the licensing or permitting agency"--here, FERC--"a certification from the State in which the discharge originates or will originate."

- 3 -

33 U.S.C. § 1341(a)(1).  The state, in turn, must evaluate the proposed project's compliance with certain provisions of the CWA and set forth limitations and monitoring requirements "necessary to assure that any applicant for a Federal license or permit will comply" with the CWA "and with any other appropriate requirement of State law set forth in such certification."  Id. § 1341(d).  A condition imposed under the state's certification "shall become a condition on any Federal license or permit subject to the provisions of this section."  Id.

On July 31, 2014, Tennessee Gas Pipeline Company, LLC ("Tennessee Gas") applied to FERC for a certificate of public convenience and necessity, which FERC eventually issued in March 2016 subject to, among other things, filing of proof that Tennessee Gas has received "all applicable authorizations required under federal law (or evidence of waiver thereof)."  In pursuit of one such authorization (or waiver thereof), Tennessee Gas submitted an application to the Massachusetts Department of Environmental Protection ("MassDEP") for water quality certification on June 30, 2015.  On June 29, 2016, after almost a full year during which interested citizens and environmental organizations (including Petitioners) participated in a nontestimonial notice-and-comment process, Tennessee Gas received conditional certification for its proposed project in a letter

from the Western Regional Office of MassDEP signed by Wetlands Program Chief David Cameron.

The letter contained over forty conditions to the project's approval, including a condition--"Condition 15"-- forbidding Tennessee Gas from conducting any "work subject to this Certification, including the cutting of trees," until "the expiration of the Appeal Period set forth below and any appeal proceedings that may result from an appeal." The conditional certification also described the appeal process, explaining that "[c]ertain persons shall have a right to request an adjudicatory hearing concerning certifications by the Department," including "[a]ny person aggrieved by this certification who has submitted written comments during the public comment period." In accordance with Massachusetts regulations on the subject, the conditional certification provided that any person who wished to appeal was required to submit a Notice of Claim for Adjudicatory Hearing within twenty-one days of the certification's issuance.

Petitioners took advantage of this provision, filing a Notice of Claim for Adjudicatory Hearing on July 20, 2016. In response, Tennessee Gas opposed Petitioners' request for a hearing and sought a stay of further administrative proceedings, claiming that once the agency had issued a conditional water quality certification, the state's involvement in the process was at an end, with any further review to be pursued through a petition to

this court.  Petitioners disagreed, as did MassDEP, which denied Tennessee Gas's request for a stay and moved forward, scheduling a final decision to be issued by April 3, 2017.  In early August 2016, Tennessee Gas filed suit in the District of Massachusetts seeking to bar MassDEP from engaging in further review. Petitioners, in turn, hedged their bets.  They filed the petition now before us in order to preserve some review of the June 29 conditional water quality certification in the event that Tennessee Gas was correct.  At the same time, they asked us to reject their petition on the grounds that Tennessee Gas is not correct; that is to say, they claim that our review is premature until MassDEP completes its adjudicatory process.

## II.  Discussion

### A.

We begin with the language of the statute that grants us the jurisdiction putatively invoked by this petition.  We have exclusive jurisdiction "over any civil action for the review of an order or action of a . . . State administrative agency acting pursuant to Federal law [in ruling on an application, as pertinent here, for a water quality certification under 33 U.S.C. § 1341(a)(1)]."  15 U.S.C. § 717r(d)(1).  In a literal sense, state agencies repeatedly take "action" in connection with applications for water quality certifications.  They docket applications, review them, and express opinions about them.  We see no reason,

though, to think that Congress wanted us to exercise immediate review over such preliminary and numerous steps that state agencies may take in processing an application before they actually act in the more relevant and consequential sense of granting or denying it.

Pushing back on this common sense conclusion, Tennessee Gas points to the fact that § 717r(d)(1) employs the term "action," bereft of the modifier "final." This contrasts with, for example, the text employed in the Administrative Procedure Act ("APA"), 5 U.S.C. § 704 ("Agency action made reviewable by statute and final agency action for which there is no other adequate remedy in a court are subject to judicial review."), and with the text of 15 U.S.C. § 717r(b), which permits judicial review of FERC orders only after FERC's denial of an application for rehearing. Therefore, reasons Tennessee Gas, we should infer that, by authorizing our review of state agency action, Congress did not limit such review to final agency action.

Such a negative inference might have interpretative force in dealing with some other subject matter. See generally, e.g., Barnhart v. Sigmon Coal Co., 534 U.S. 439, 452 (2002) (articulating the rule of statutory construction that courts should typically infer that Congress intends differences in statutory language to effect differences in statutory application). Here, though, the subject matter is judicial review

of agency action, which review Congress creates in the context of a long-standing and well-settled "strong presumption . . . that judicial review will be available only when agency action becomes final." Bell v. New Jersey, 461 U.S. 773, 778 (1973) (citing FPC v. Metro. Edison Co., 304 U.S. 375, 383-85 (1938)).  To say that silence on the subject implies no requirement of finality would be to recognize this "strong presumption" only when it is of little benefit.

It is also unclear that Congress's reference to FERC's internal review process in § 717r(b), coupled with the lack of a similar reference in § 717r(d)(1) to the internal review processes of state agencies, even raises the inference that Tennessee Gas claims.  Rather, there is a more plausible explanation for Congress's decision to write the statute this way:  unlike the FERC procedures described in § 717r(b), which are the same for any applicant proposing a project in any state or states, the state procedures giving rise to orders reviewable under § 717r(d)(1) may (and undoubtedly do) vary widely from jurisdiction to jurisdiction.  Thus, whereas it is reasonable to interpret a reference to FERC's rehearing process as a signal that final agency action is required under § 717r(b), it does not make sense to draw the negative inference that the lack of a reference in § 717r(d)(1) to the variegated internal review mechanisms deployed by state agencies sends the opposite signal.  Simply put, the text of

§ 717r(d)(1), on its own or read alongside § 717r(b), does not rebut the strong presumption that judicial review is available only following final agency action.

Further reinforcement for the strong presumption restricting review until an agency has taken final action resides in Congress's numerous efforts to prevent states from unreasonably delaying the performance of their reserved roles in connection with natural gas projects. In connection with any permit required by federal law, § 717r(d)(2) authorizes the United States Court of Appeals for the District of Columbia to issue injunctive relief when a state agency "fail[s] to act" on such a permit in accordance with a schedule established by FERC. Where the permit is a water quality certification required by 33 U.S.C. § 1341(a)(1), a state waives its right in connection with a FERC application if it "fails or refuses to act on a request for certification, within a reasonable period of time (which shall not exceed one year) after receipt of such request." Id. The very fact that Congress has granted us the unusual ability to review directly (and on an expedited basis, 15 U.S.C. § 712r(d)(5)) action by a state agency can itself be seen as further evidence that Congress sought to reduce the potential for the use of delay to block natural gas projects. Certainly nothing in the legislative history of § 717r(d)(1) belies that perception. See Islander E. Pipeline Co. v. Conn. Dep't of Envtl. Prot., 482 F.3d 79, 85 (2d Cir. 2006)

- 9 -

("[A]pplicants . . . were encountering difficulty proceeding with natural gas projects that depended on obtaining state agency permits." (citing Regional Energy Reliability and Security: DOE Authorization to Energize the Cross Sound Cable: Hearing Before the H. Subcomm. on Energy & Air Quality, 108th Cong. 8 (2004) (statement of Rep. Barton), and Natural Gas Symposium: Symposium Before the S. Comm. on Energy & Nat. Res., 109th Cong. 41 (2005) (statement of Mark Robinson, Director, Office of Energy Projects, FERC))). A Congress that placed so much emphasis upon avoiding delay in the adjudication of requests for certification of this type would not likely have intended to authorize the delay that interlocutory reviews of every state agency action, final or not, would inevitably engender.

Tennessee Gas contends that finding a final agency action requirement in § 717r(d)(1) nevertheless puts us at odds with the Second Circuit's decision in Islander East. In that decision, the court did not dismiss the case sua sponte for lack of subject matter jurisdiction even though, Tennessee Gas says, the state agency had not taken final action. Therefore, Tennessee Gas reasons, the Second Circuit must have construed § 717r(d)(1) to confer subject matter jurisdiction to review non-final agency action. See Tenn. Gas Pipeline Co. v. Del. Riverkeeper Network, 921 F. Supp. 2d 381, 392-93 (M.D. Pa. 2013) (articulating this argument). We think it a stretch, however, to draw so sweeping an

inference from a court's rendering of a decision on the merits where the question of subject matter jurisdiction was not squarely before or even addressed by the court. The Second Circuit in Islander East evidenced no awareness that it might be reviewing an incomplete state agency action, as opposed to a completed state agency action for which state court review was not yet exhausted. See Islander East, 482 F.3d at 88 n.7. We therefore find little if any persuasive force in Tennessee Gas's reliance on that decision.

Tennessee Gas also appears to argue that reading § 717r(d)(1) to permit judicial review of only a state agency's "final action" would be tantamount to imposing an exhaustion of administrative remedies requirement where one is not provided by the statute. In that vein, the company urges us to adopt the reasoning of other courts that have found exhaustion of administrative remedies unnecessary to trigger the exclusive and original jurisdiction of a United States Circuit Court of Appeals under § 717r(d)(1). See, e.g., AES Sparrows Point LNG, LLC v. Wilson, 589 F.3d 721, 727 (4th Cir. 2009); Islander East, 482 F.3d at 88 n.7; Del. Riverkeeper, 921 F. Supp. 2d at 391–92.

We disagree with Tennessee Gas's premise. Finding that a statute requires final agency action is different from finding that it requires exhaustion. "[T]he judicial doctrine of exhaustion of administrative remedies is conceptually distinct

- 11 -

from the doctrine of finality": whereas exhaustion "refers to administrative and judicial procedures by which an injured party may seek review of an adverse decision and obtain a remedy if the decision is found to be unlawful or otherwise inappropriate," finality "is concerned with whether the initial decisionmaker has arrived at a definitive position on the issue that inflicts an actual, concrete injury." Darby v. Cisneros, 509 U.S. 137, 144 (1993) (second and third quotations quoting Williamson Cty. Reg'l Planning Comm'n v. Hamilton Bank of Johnson City, 473 U.S. 172, 193 (1985)). Each of the courts Tennessee Gas asks us to join was tasked with determining whether § 717r(d)(1) barred either a second, separate state agency or a state court from reviewing a state agency's final decision granting, conditioning, or denying a water quality certification. We, by contrast, are faced with the question whether a single agency must render a final decision before a United States Circuit Court of Appeals may take jurisdiction to analyze whether the decision was sound.

We therefore conclude that there is ample reason to stick to the strong presumption restricting our review to final agency action of a type that is customarily subject to judicial review.

**B.**

The foregoing brings us to Tennessee Gas's alternative, and principal, argument: that the June 29, 2016, letter from MassDEP constituted final agency action granting its application,

albeit with conditions.  Under this view, the continuing proceeding at MassDEP is in the nature of the type of appellate review that falls within the exclusive province of this court.

An agency action is "final" only where it "represents the culmination of the agency's decisionmaking process and conclusively determines the rights and obligations of the parties with respect to the matters at issue."  Rhode Island v. EPA, 378 F.3d 19, 23 (1st Cir. 2004); cf. Bennett v. Spear, 520 U.S. 154, 177-78 (1997) (holding that "final agency action" under the APA, 5 U.S.C. § 704, must be "the 'consummation' of the agency's decisionmaking process," "must not be of a merely tentative or interlocutory nature," and "must be one by which 'rights or obligations have been determined,' or from which 'legal consequences will flow'" (first quoting Chi. & S. Air Lines, Inc. v. Waterman S.S. Corp., 333 U.S. 103, 113 (1948); and then quoting Port of Bos. Marine Terminal Ass'n v. Rederiaktiebolaget Transatlantic, 400 U.S. 62, 71 (1970))).

In form, there is something to Tennessee Gas's argument that the June 29 letter constituted final agency action.  The MassDEP officials did issue a formal document that states "the Department grants a Water Quality Certification . . . subject to the following conditions . . . necessary to maintain water quality, to minimize impact . . . and to ensure compliance with appropriate state law."  The regulations (and the certification itself) refer

- 13 -

to the adjudicatory hearing following an application for water quality certification as an "appeal."  See, e.g., 310 Mass. Code Regs. § 1.01(1)(c) ("Adjudicatory Appeal or Appeal means the portion of an adjudicatory proceeding initiated by filing a notice of claim with the Department and concluded by a final decision."); 314 Mass. Code Regs. § 9.09(1)(e) (referring to "the appeal period" and final decisions following "an appeal"); id. § 9.10 (describing, in a provision entitled "Appeals," the process of filing a notice of claim and engaging in an adjudicatory hearing).  Where no adjudicatory hearing is sought and the certification is not further challenged in court, a water quality certification has the force and effect of law.  See id. § 9.11 ("Failure to comply with . . . a 401 Water Quality Certification . . . shall be enforced [under regulatory provisions concerning administrative penalties].").  And the regulations neither refer to water quality certifications as "preliminary" or "proposed" nor require certifications or denials to include those words.

The substance of the Massachusetts regulatory regime, however, shows the contrary:  an initial letter granting a water quality certification subject to Condition 15, either before the twenty-one day window to request a hearing has lapsed or after a timely notice of claim is filed, is not a final agency action. Three aspects of the water quality certification that MassDEP

issued in this case and the regulatory regime that gave rise to it lead us to this conclusion.

First, Massachusetts law makes clear that Tennessee Gas's application seeking a determination of its rights in the form of a water quality certification initiated a single, unitary proceeding, an essential part of which is the opportunity (of which petitioners have availed themselves) to have an adjudicatory hearing. Under Massachusetts law, "a proceeding before an agency in which the legal rights, duties or privileges of specifically named persons are required by constitutional right or by any provision of the General Laws to be determined after opportunity for an agency hearing" is an "[a]djudicatory proceeding." Mass. Gen. Laws ch. 30A, § 1(1). MassDEP regulations, in turn, provide that an adjudicatory proceeding "means a proceeding under [chapter 0A] that may culminate in an adjudicatory hearing and the Commissioner's issuance of a final decision." 310 Mass. Code Regs. § 1.01(c). Those same regulations also define such a hearing as one in which "parties may present evidence on issues of fact, and argument on issues of law and fact prior to the Commissioner's issuance of a final decision." Id. No party disputes that, in the present context, such a presentation of evidence and arguments occurs after the issuance of a conditional certification, not before.

Second, the review to be provided in the adjudicatory hearing is a review of Tennessee Gas's application, rather than a review of a prior agency decision. MassDEP accords no deference to the preliminary findings included in the certification, see Conservation Comm'n of Falmouth v. Pacheco, 733 N.E.2d 127, 130 (Mass. App. Ct. 2000), and the regulations expressly provide that the agency may even consider "new substantive issues arising from material changes to the scope or impact of the activity and not apparent at the time of public notice" from persons who did not participate in the notice-and-comment process, 314 Mass. Code Regs. § 9.10(1). When a notice of claim is timely filed following the issuance of a water quality certification, the agency's review of the proposed project continues more or less as though no decision has been rendered at all.

Third, the manner in which Massachusetts has chosen to structure its internal agency decision-making strikes us as hardly unusual or contrived. It allows for unopposed actions to proceed to finality without the time and expense of full-blown adjudicatory proceedings, while preserving the parties' rights to such proceedings when sought. With the taking of evidence and de novo consideration, it bears the hallmarks of decision-making by expert administrative agencies rather than those of judicial review. Its chief drawback, as demonstrated here, is its duration. Congress, though, has addressed the matter of delay directly, see 15 U.S.C.

- 16 -

§ 717r(d)(2); 33 U.S.C. § 1341(a)(1),[1] and by divesting states of their customary review of state agency orders and opinions in this field, see 15 U.S.C. § 717r(d)(1). We see no indication that Congress otherwise intended to dictate how (as opposed to how quickly) MassDEP conducts its internal decision-making before finally acting. See 33 U.S.C. § 1251(b) ("It is the policy of the Congress to recognize, preserve, and protect the primary responsibilities and rights of States to prevent, reduce, and eliminate pollution, [and] to plan the development and use (including restoration, preservation, and enhancement) of land and water resources . . . ."); United States v. Cooper, 482 F.3d 658, 667 (4th Cir. 2007) ("In the CWA, Congress expressed its respect for states' role through a scheme of cooperative federalism that enables states to 'implement . . . permit programs' like [the one at issue here.]"); S. Ohio Coal Co. v. Office of Surface Mining, Reclamation & Enf't, Dep't of Interior, 20 F.3d 1418, 1427 (6th Cir. 1994) ("[T]he CWA sets up a system of 'cooperative

---

[1] Our consideration of the jurisdictional issue posed by this case leaves us with no occasion to consider whether, because MassDEP did not finally act on Tennessee Gas's application within one year, the requirement that Tennessee Gas obtain a water quality certification from the Commonwealth of Massachusetts has been waived. See 33 U.S.C. § 1341(a)(1). Nor have we considered the potential relevance of 15 U.S.C. § 717r(d)(2) (granting the D.C. Circuit "original and exclusive jurisdiction over any civil action for the review" of a state agency's "alleged failure to act . . . to issue, condition, or deny any permit required under Federal law" for a facility subject to NGA § 717f).

federalism,' in which states may choose to be primarily responsible for running federally-approved programs."); cf. Dominion Transmission, Inc. v. Summers, 723 F.3d 238, 240 (D.C. Cir. 2013) (noting that the NGA "expressly does not preempt" certain environmental protection laws like the Clean Air Act that contemplate a robust role for states).

### III. Conclusion

There is, as yet, no order or action of MassDEP in connection with Tennessee Gas's application for a water quality certification that we may review under 15 U.S.C. § 717r(d)(1). We therefore dismiss the petition for review for lack of subject matter jurisdiction. Each party shall bear its own costs.