**PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 17-1533
_____

DELAWARE RIVERKEEPER NETWORK;
MAYA VAN ROSSUM, the Delaware Riverkeeper,
                                        Petitioners

v.

SECRETARY OF THE PENNSYLVANIA DEPARTMENT
OF ENVIRONMENTAL PROTECTION;
PENNSYLVANIA DEPARTMENT OF
ENVIRONMENTAL PROTECTION,
                                        Respondents


Tennessee Gas Pipeline Co.,
                                        Intervenor

On Petition for Review from the Pennsylvania Department of
Environmental Protection
WQ02-002
E52-253
E63-305
FERC-1 :  FERC CP16-4

Argued July 13, 2017

Before: SMITH, *Chief Judge,* NYGAARD, and FUENTES, *Circuit Judges*

(Filed: August 30, 2017)

Aaron J. Stemplewicz     **[ARGUED]**
Delaware Riverkeeper Network
925 Canal Street, Suite 3701
Bristol, PA  19007
        *Counsel for Petitioners*

Aledandra C. Chiaruttini
Joseph S. Cigan III     **[ARGUED]**
Commonwealth of Pennsylvania
Department of Environmental Protection
2 Public Square
Wilkes-Barre, PA  18701

Kimberly Hummel Childe
Office of Attorney General of Pennsylvania
Department of Environmental Resources
9th Floor
P.O. Box 8464
Harrisburg, PA  17105
        *Counsel for Respondents*

Pamela S. Goodwin
Saul Ewing
650 College Road East, Suite 4000
Princeton, NJ  08540

Patrick F. Nugent
John F. Stoviak      **[ARGUED]**
Saul Ewing
1500 Market Street
Centre Square West, 38th Floor
Philadelphia, PA  19102

Elizabeth U. Witmer
Saul Ewing
1200 Liberty Ridge Drive, Suite 200
Wayne, PA  19087
    *Counsel for Intervenor Respondent*

––––––––––––––––

OPINION OF THE COURT

––––––––––––––––

SMITH, *Chief Judge.*

Tennessee Gas Pipeline Co. ("Tennessee Gas") submitted applications to several federal and state agencies seeking approval to build an interstate pipeline project. One such agency is the Pennsylvania Department of Environmental Protection ("PADEP"),[1] which issued a permit approving the

---

[1] A companion case, also before this panel, raises challenges to the United States Army Corps of Engineers. *See Del. Riverkeeper Network v. U.S. Army Corps of Eng'rs*, No. 17-1506 (3d Cir. 2017).

project. The petitioners, Maya van Rossum and Delaware Riverkeeper Network (collectively, "Riverkeeper"), argue that we lack jurisdiction to rule on its petition because PADEP's order was not final. As to the merits, Riverkeeper challenges PADEP's decision on the grounds that the agency made an erroneous "water dependency" finding and improperly rejected a "compression" alternative to the pipeline project.

We will exercise jurisdiction because PADEP's decision was final. We will also uphold PADEP's decision on the merits because the agency's unique interpretation of water dependency is reasonable and worthy of deference. Furthermore, the agency considered and rejected the compression alternative for reasons that are supported by the record. We will therefore deny the petition for review.

I

At issue is the so-called Orion Project—12.9 miles of pipeline looping that would transport 135,000 dekatherms of natural gas per day via Pennsylvania. Approximately 99.5% of the new pipeline would run alongside existing pipelines.

Full background information on the Orion Project is provided in a companion case, *Delaware Riverkeeper Network v. U.S. Army Corps of Engineers*, No. 17-1506 (3d Cir. 2017). For purposes of this opinion, we will focus on the aspects of the state administrative procedures at issue here.

Under the Natural Gas Act of 1938, the Federal Energy Regulatory Commission ("FERC") is the "lead agency" for evaluating interstate pipeline projects. 15 U.S.C. § 717n(b). As

a condition of FERC approval, the applicant is required to obtain any other state or federal licenses required by law. One such license is called a Water Quality Certification governed by Section 401 of the Clean Water Act. 33 U.S.C. § 1341. "A Water Quality Certification confirms that a given facility will comply with federal discharge limitations and state water quality standards." *Del. Riverkeeper Network v. Sec'y Pa. Dep't of Envtl. Prot.*, 833 F.3d 360, 368 (3d Cir. 2016), *as amended* (March 24, 2017). "For activities affecting Pennsylvania waters, . . . Water Quality Certifications are issued by PADEP." *Id.* at 369.

As a condition of obtaining a Water Quality Certification, PADEP requires applicants to obtain other state permits, including a Water Obstruction and Encroachment Permit issued under Pennsylvania's Dam Safety and Encroachment Act and its implementing regulations, 25 Pa. Code Ch. 105. Those permits are commonly referred to as "Chapter 105 permits."

Chapter 105 gives special protection to "exceptional value" wetlands. Wetlands are considered to have exceptional value if, *inter alia*, they are located along a drinking water supply or serve as habitat for endangered species. *See* 25 Pa. Code § 105.17(1). It is undisputed that the Orion Project would affect ten exceptional-value wetlands in Pike County and three in Wayne County.

PADEP cannot issue a Chapter 105 permit for a project affecting exceptional-value wetlands unless it certifies in writing that seven requirements are met. 25 Pa. Code § 105.18a. Two are relevant here:

(2) The project is water-dependent. A project is water-dependent when the project requires access or proximity to or siting within the wetland to fulfill the basic purposes of the project.

(3) There is no practicable alternative to the proposed project that would not involve a wetland or that would have less effect on the wetland, and not have other significant adverse effects on the environment.

*Id.* § 105.18a(a)(2)–(3).

On September 20, 2016, PADEP issued a conditional Water Quality Certification for the Orion Project. Then, on February 23, 2017, PADEP issued two Chapter 105 permits approving the Orion Project's stream and wetland crossings—Permit Nos. E52-253 (Pike County) and E64-305 (Wayne County). In doing so, PADEP certified that the Orion Project "[i]s water dependent" and would be "the least environmentally damaging alternative." JA 49, 180.

On March 10, 2017, Riverkeeper filed this petition for review. We granted Tennessee Gas's motion to intervene on March 17, 2017. Riverkeeper filed a motion for an emergency stay, which this Court denied on April 7, 2017. Riverkeeper then filed a motion to expedite the case. We granted that motion on May 8, 2017.

## II

The parties ask us to resolve two jurisdictional issues: (1) whether we may review nonfinal administrative orders under the Natural Gas Act; and (2) whether the petition was timely filed. We need not reach the first question. The agency decision at issue *is* final, and therefore jurisdiction would be proper under either interpretation of the Natural Gas Act. As for the second question, we conclude that the petition was timely filed.

### A

First, Riverkeeper argues that we lack jurisdiction because we may only review final orders, and PADEP's order is not final until it has been reviewed by a separate administrative entity, Pennsylvania's Environmental Hearing Board. Riverkeeper asks us to transfer the case to the Board.[2] We conclude that jurisdiction is proper because PADEP's order is final.

### 1

Our jurisdiction is controlled by Section 19(d) of the Natural Gas Act, as amended in 2005. Where an interstate pipeline project is proposed to be constructed, *see* 15 U.S.C.

---

[2] Because we conclude that jurisdiction is proper, we need not address Riverkeeper's request for a transfer. *See McLaughlin v. Arco Polymers, Inc.*, 721 F.2d 426, 430 (3d Cir. 1983); *see also Moravian Sch. Advisory Bd. of St. Thomas, V.I. v. Rawlins*, 70 F.3d 270, 276 (3d Cir. 1995).

§ 717f, this Court has "original and exclusive jurisdiction over any civil action for the review of an order or action of a . . . State administrative agency acting pursuant to Federal law to issue . . . any permit, license, concurrence, or approval . . . required under Federal law," *id.* § 717r(d)(1).

In a recent precedential opinion, this Court exercised jurisdiction over a similar PADEP decision involving the "Leidy Line" pipeline project. *Del. Riverkeeper*, 833 F.3d 360. The petitioner, also Riverkeeper, challenged PADEP's decision to issue a Water Quality Certification. This Court concluded that "the issuance of a Water Quality Certification is not purely a matter of state law" because the certification "is an integral element of the regulatory scheme established by the Clean Water Act." *Id.* at 371. Thus, PADEP was "acting pursuant to Federal law" within the meaning of the Natural Gas Act. 15 U.S.C. § 717r(d)(1). We also exercised jurisdiction over various permits issued by the New Jersey Department of Environmental Protection, even though some permits were "governed by state law rather than the Clean Water Act." *Del. Riverkeeper*, 833 F.3d at 374. Because those state-law permits were, "in effect, a set of conditions" on obtaining approval under the Clean Water Act, *id.* (citing 33 U.S.C. § 1341(d)), they were issued "pursuant to Federal law," 15 U.S.C. § 717r(d)(1). Likewise here, the Chapter 105 permits were conditions of federal approval and therefore were issued "pursuant to Federal law." *Id.*; *see Del. Riverkeeper*, 833 F.3d at 386 ("Because the Chapter 105 Permit was a condition of the Water Quality Certification, it is inextricably intertwined with the Water Quality Certification.").

After the Leidy Line ruling, the First Circuit decided *Berkshire Environmental Action Team, Inc. v. Tennessee Gas Pipeline Co., LLC*, 851 F.3d 105 (1st Cir. 2017). *Berkshire* ruled on an issue that was not raised in the Leidy Line case: finality.

First, *Berkshire* held that § 717r(d)(1) includes an unstated finality requirement. Even though the statute does not use the word "final," the First Circuit read that word into the statute based on the "strong presumption . . . that judicial review will be available only when agency action becomes final." *Id.* at 109 (quoting *Bell v. New Jersey*, 461 U.S. 773, 778 (1983)); *see also Columbia Riverkeeper v. U.S. Coast Guard*, 761 F.3d 1084, 1092 (9th Cir. 2014). *But see Tenn. Gas Pipeline Co. LLC v. Del. Riverkeeper Network*, 921 F. Supp. 2d 381, 391 (M.D. Pa. 2013).[3]

Second, *Berkshire* concluded that the particular agency decision at issue was not final. It evaluated "[t]he substance of the Massachusetts regulatory regime," *Berkshire*, 851 F.3d at 112, and concluded that the applicant (also Tennessee Gas) was required to go through an additional adjudicatory hearing

---

[3] *But see also Energy Transfer Partners, L.P. v. F.E.R.C.*, 567 F.3d 134, 139 (5th Cir. 2009) ("Our court has long recognized that [§ 717r(b), governing appeals from FERC,] does not require that an order be a 'final' one[.]"); *Atl. Seaboard Corp. v. Fed. Power Comm'n*, 201 F.2d 568, 572 (4th Cir. 1953) ("The commission argues that the order which we are asked to review is not a definitive or final order of the commission; but our power to review is not limited to final orders.").

before the agency action would be ripe for review. *Berkshire* characterized the adjudicatory hearing as a continuation of "a single, unitary proceeding" that had not yet finally concluded. *Id.*

Although the Leidy Line case was procedurally similar to this one, the finality issue was not presented and remains unresolved in this circuit. We must therefore address it. *See, e.g.*, *Ehleiter v. Grapetree Shores, Inc.*, 482 F.3d 207, 211 (3d Cir. 2007) ("[A] court of appeals has both the inherent authority and a continuing obligation to assess whether it has jurisdiction over a case or controversy before rendering a decision on the merits.").

2

Riverkeeper argues that we should follow *Berkshire*'s holding and read a finality requirement into § 717r(d)(1). Riverkeeper further argues that PADEP's order is not final because Pennsylvania's administrative scheme is analogous to Massachusetts's. We need not rule on whether § 717r(d)(1) includes an unstated finality requirement. In either case, our jurisdiction is proper because the agency action here *is* administratively final.

"Our cases have interpreted pragmatically the requirement of administrative finality, focusing on whether judicial review at the time will disrupt the administrative process." *Bell*, 461 U.S. at 779. Final agency action "must mark the 'consummation' of the agency's decisionmaking process," "must not be of a merely tentative or interlocutory nature," and "must be one by which 'rights or obligations have been

10

determined,' or from which 'legal consequences will flow.'" *Bennett v. Spear*, 520 U.S. 154, 177–78 (1997) (quoting *Chicago & Southern Air Lines, Inc. v. Waterman S.S. Corp.*, 333 U.S. 103, 113 (1948) and *Port of Boston Marine Terminal Assn. v. Rederiaktiebolaget Transatlantic*, 400 U.S. 62, 71 (1970)).

According to Riverkeeper, Pennsylvania's administrative process does not reach a final conclusion until PADEP's order has been reviewed by a separate administrative entity, the Environmental Hearing Board. In support of that proposition, Riverkeeper cites the Pennsylvania statute governing the Board's jurisdiction:

> [N]o action of the department [PADEP[4]] adversely affecting a person shall be final as to that person until the person has had the opportunity to appeal the action to the board . . . . If a person has not perfected an appeal in accordance with the regulations of the board, the department's action shall be final as to the person.

---

[4] Note that the statute defines "Department" as "The Department of Environmental Resources of the Commonwealth." 35 P.S. § 7512. Nonetheless, the parties appear to agree that the statute applies to that agency's more recent incarnation, the Department of Environmental Protection. *See Texas Keystone Inc. v. Pa. Dep't of Conservation & Nat. Res.*, 851 A.2d 228, 239 (Pa. Commw. Ct. 2004).

35 P.S. § 7514(c). Riverkeeper seizes on the first sentence to argue that there has been no "appeal . . . to the board," *id.*, and therefore the administrative process has not culminated in a final decision over which we may exercise jurisdiction.

Assuming (without deciding) that § 7514(c) controls appellate ripeness,[5] the order in question is nonetheless final because Riverkeeper "has not perfected an appeal in accordance with the regulations of the board." *Id.* The relevant regulation provides that an appeal to the Environmental Hearing Board must be filed within "[t]hirty days after the notice of the action has been published in the *Pennsylvania Bulletin*." 25 Pa. Code § 1021.52(a)(2)(i). PADEP published notice on October 8, 2016. This petition was filed in March 2017, and Riverkeeper did not take an appeal to the Environmental Hearing Board in the interim. Thus, PADEP's order became "final" under 35 P.S. § 7514(c) in November

---

[5] Paradoxically, the Board appears to apply its own finality requirement that approximates the federal standard, notwithstanding § 7514(c). *See Law v. Dep't of Envtl. Prot.*, No. 1071 C.D. 2008, 2009 WL 9096519, at *2 (Pa. Commw. Ct. Jan. 23, 2009) ("[A] letter does not constitute an adjudication or a final decision or an appealable order from which an appeal can be taken from the Department to the Board."); Commonwealth of Pennsylvania Environmental Hearing Board, *Practice and Procedure Manual* at 6–7 (2015 ed.) (citing multiple decisions for the proposition that the Board has jurisdiction "over final Department actions adversely affecting personal or property rights, privileges, immunities, duties, liabilities or obligations of a person").

2016. *See Com., Dep't of Envtl. Prot. v. Cromwell Twp.*, 32 A.3d 639, 653 (Pa. 2011) ("[T]he failure to appeal within thirty days rendered DEP's action final."); *Otte v. Covington Twp. Rd. Sup'rs*, 650 A.2d 412, 414 (Pa. 1994); *cf. Berkshire*, 851 F.3d at 108 (noting that the petitioners dual-filed by "filing a Notice of Claim for Adjudicatory Hearing," and also "hedged their bets" by filing a petition before the First Circuit).[6]

Apart from § 7514(c), PADEP's permits also bear the traditional hallmarks of final agency action. There is nothing left for the agency to do, and thus PADEP's decision "mark[s] the 'consummation' of the agency's decisionmaking process" and is not "of a merely tentative or interlocutory nature." *Bennett*, 520 U.S. at 178 (quoting *Chicago & Southern Air Lines*, 333 U.S. at 113). Furthermore, its order is "one by which 'rights or obligations have been determined,' [and] from which 'legal consequences will flow.'" *Id.* (quoting *Port of Boston Marine Terminal Assn.*, 400 U.S. at 71). As each permit states,

---

[6] Riverkeeper objects, contending that PADEP's order is not final because Riverkeeper may attempt to file an appeal nunc pro tunc before the Environmental Hearing Board. *See* 25 Pa. Code § 1021.53a; *Twp. of Robinson v. Dep't of Envtl. Prot.*, No. 451 C.D. 2007, 2008 WL 9405218, at *4 (Pa. Commw. Ct. July 3, 2008). But by that logic, a PADEP decision would never become final under the second sentence of § 7514(c). As the case comes before us, there has been no appeal to the Board, and in applying the text of § 7514(c), we do not think it would be appropriate to speculate about whether the Board would accept a nunc pro tunc appeal.

"This permit authorizes the construction, operation, maintenance and normal repair of the permitted structures." JA 36; JA 167; *see* Transcript of Oral Argument at 31:24–32:3 ("When that permit issued and we had the approval of FERC . . . , we started construction . . . ."); *NE Hub Partners, L.P. v. CNG Transmission Corp.*, 239 F.3d 333, 346 (3d Cir. 2001) ("Pa.D.E.P. permits are valid pending the E.H.B. outcome . . . ."); *Com., Dep't of Envtl. Res. v. Bethlehem Steel Corp.*, 367 A.2d 222, 229 (Pa. 1976) (holding that jurisdiction existed to enforce a consent order issued by the Department despite a pending appeal before the Board seeking modification); *cf. Berkshire*, 851 F.3d at 108 (noting that construction could not begin until "the expiration of the Appeal Period set forth below and any appeal proceedings that may result from an appeal").

Thus, by combination of § 7514(c) and the practical significance of PADEP's permits, we conclude that we are reviewing final agency action. Our jurisdiction is proper regardless of whether the Natural Gas Act limits our review to final orders. We note, however, that there are cases pending before this Court where the petitioners dual-filed appeals before the Environmental Hearing Board. *See, e.g.*, Docket Nos. 16-2212, 16-2218, 16-2400. Those actions ask this Court to review orders that are arguably nonfinal under § 7514(c). Whether the Natural Gas Act requires finality and how such a requirement would interact with Pennsylvania's administrative scheme are issues better resolved in those cases.

B

PADEP argues that, because Riverkeeper's petition would be untimely before the Environmental Hearing Board, it is also

14

untimely before us. We reject that argument because the regulation governing appeals before the Environmental Hearing Board does not define the timeliness of petitions before this Court.

Under Rule 15 of the Federal Rules of Appellate Procedure, "[r]eview of an agency order is commenced by filing, *within the time prescribed by law*, a petition for review." Fed. R. App. P. 15(a)(1) (emphasis added). "The procedures set forth in subsection (a) of Rule 15 are jurisdictional." *Wisniewski v. Dir., Office of Workers' Comp. Programs, U.S. Dep't of Labor*, 929 F.2d 952, 954 (3d Cir. 1991).

According to PADEP, "the time prescribed by law," Fed. R. App. P. 15(a)(1), refers to the state regulatory provision that governs appeals from PADEP to the Environmental Hearing Board. As described above, the appeal must be filed within "[t]hirty days after the notice of the action has been published in the *Pennsylvania Bulletin*." 25 Pa. Code § 1021.52(a)(2)(i).

But this is not an appeal before the Environmental Hearing Board, and the Board's regulations are not binding on us. Rather, Rule 15 "defin[es] the time for filing a petition for review with reference to the statute providing for review of the agency's orders." *United Gas Pipe Line Co. v. FERC*, 824 F.2d 417, 435 (5th Cir. 1987). That refers to Section 19(d) of the Natural Gas Act. *See Islander E. Pipeline Co., LLC v. Conn. Dep't of Envtl. Prot.*, 482 F.3d 79, 83–84 (2d Cir. 2006) ("[T]he NGA . . . provides an expedited direct cause of action in the federal appellate courts to challenge a state administrative agency's order . . . .").

15

For appeals from FERC, the Natural Gas Act prescribes a sixty-day limitations period. *See* 15 U.S.C. § 717r(b). For appeals from other federal agencies and state agencies, however, the statute provides no limitation. *See id.* § 717r(d)(1). Whether timeliness is governed by the four-year catchall limitations period established by 28 U.S.C. § 1658(a),[7] or laches, *Schaefer v. NLRB*, 697 F.2d 558, 560–61 (3d Cir. 1983), we are unable to conclude that Riverkeeper filed its petition out of time.

Accordingly, jurisdiction is proper under the Natural Gas Act and under Rule 15 of the Federal Rules of Appellate Procedure.

## III

Turning to the merits, we review for arbitrary or capricious agency action. *Del. Riverkeeper*, 833 F.3d at 377.[8] Riverkeeper argues that PADEP erred under that standard for two reasons. First, Riverkeeper argues that PADEP made an erroneous

---

[7] Although not raised by the parties, 28 U.S.C. § 1658(a) establishes a four-year limitations period for any "civil action arising under an Act of Congress enacted after" December 1, 1990. *See Jones v. R.R. Donnelley & Sons Co.*, 541 U.S. 369, 382 (2004); *N. Star Steel Co. v. Thomas*, 515 U.S. 29, 34 n.* (1995).

[8] The arbitrary-and-capricious standard derives from the Administrative Procedure Act, 5 U.S.C. § 706(2)(A), which does not cover state agencies, *see id.* § 701(b)(1). Nonetheless, this court and others have applied that standard. *See, e.g., Del. Riverkeeper*, 833 F.3d at 377; *Islander*, 482 F.3d at 94.

"water dependency" finding. Second, Riverkeeper argues that PADEP erred by ruling out a "compression" alternative. We reject both arguments in turn.

## A

PADEP determined that the Orion Project is "water dependent." According to Riverkeeper, that finding was erroneous because linear infrastructure projects (like pipelines and roads) are categorically *not* water dependent. PADEP acknowledges that, under federal law, Riverkeeper might be right. But under *Pennsylvania* law, PADEP argues, water dependency operates differently. We conclude that PADEP has provided a reasonable explanation for how its regulations differ, and we will defer to its interpretation.

Because the Orion Project would construct pipeline looping through "exceptional value" wetlands, 25 Pa. Code § 105.17(1), PADEP cannot approve the project without first certifying that "[t]he project is water-dependent," 25 Pa. Code § 105.18a(a)(2). "A project is water-dependent when the project requires access or proximity to or siting within the wetland to fulfill the basic purposes of the project." *Id.*

Riverkeeper thus argues, by reference to federal law, that pipelines and other types of linear infrastructure are categorically not water dependent. It relies on the following explanation of water dependency by a federal agency, the United States Army Corps of Engineers:

> [T]he purpose of a residential development is to provide housing for people. Houses do not have

17

to be located in a special aquatic site to fulfill the basic purpose of the project, i.e., providing shelter. Therefore, a residential development is not water dependent. . . . Examples of water dependent projects include, but are not limited to, dams, marinas, mooring facilities, and docks. The basic purpose of these projects is to provide access to the water.

*Sierra Club v. Van Antwerp*, 709 F. Supp. 2d 1254, 1261 (S.D. Fla. 2009) (quoting Army Corps of Engineers Standard Operating Procedures for the Regulatory Program (October 15, 1999)), *aff'd*, 362 F. App'x 100 (11th Cir. 2010). Under that understanding, Riverkeeper argues that pipeline projects are not water dependent because, unlike a dam, marina, or dock, pipelines are not by their nature dependent on being in or near water—even if the desired construction path would cross a wetland or waterbody. *See, e.g.*, *Coastal Conservation League v. U.S. Army Corps of Eng'rs*, No. 4:16-cv-03008, 2016 WL 6823375, at *14 (D.S.C. Nov. 18, 2016) (noting that a road project is not water dependent even though "expanding and improving the road cannot occur without impacting special aquatic sites").

In the context of the federal regulatory scheme, that understanding of water dependency makes sense. If a project is water dependent, like a dam, it is impossible to construct without impacting an aquatic site. But if a project is not water dependent, "practicable alternatives that do not involve special aquatic sites are presumed to be available, unless clearly demonstrated otherwise." 40 C.F.R. § 230.10(a)(3). In other words, the agency will presume that the applicant can select a

18

different pipeline route or other alternative that does not affect an aquatic site. If the applicant rebuts that presumption, the project does not become "water dependent"; the applicant has simply met its burden under the regulation. In other words, the water-dependency finding comes first and the alternatives analysis comes second.

PADEP took a different approach. It observed that the proposed pipeline looping "needs to cross the wetland areas to access land on either side of the wetland system" because "there are no practicable crossing alternatives to avoid the crossing." JA 49, 180. Indeed, "[l]inear infrastructure projects of any significant length proposed in Pennsylvania will encounter surface waters, including wetlands." Resp. Br. 14. By rejecting alternatives to the Orion Project and observing the pipeline's path would unavoidably traverse wetlands, PADEP concluded that the Orion Project is water dependent. Rather than treating water dependency and alternatives analysis as two distinct inquiries, PADEP combined them into one step.

Riverkeeper argues that the federal understanding of water dependency should control. The definition of water dependency in 25 Pa. Code § 105.18a(a)(2) is identical to its federal counterpart, 40 C.F.R. § 230.10(a)(3); *see also* 25 Pa. Code § 105.18a(b)(3)(i) ("It shall be a rebuttable presumption that there is a practicable alternative, not involving a wetland, to a nonwater-dependent project, and that the alternative would have less adverse impact on the wetland.").

PADEP responds that Riverkeeper's emphasis on federal law is misplaced because PADEP relied on a regulatory provision unique to Pennsylvania:

19

> (b) In reviewing a permit application under this chapter, the Department will use the following factors to make a determination of impact:

> . . .

> (7) The extent to which a project is water dependent and thereby requires access or proximity to or siting within water to fulfill the basic purposes of the project. The dependency must be based on the demonstrated unavailability of any alternative location, route or design and the use of location, route or design to avoid or minimize the adverse impact of the dam, water obstruction or encroachment upon the environment and protect the public natural resources of this Commonwealth.

25 Pa. Code § 105.14(b)(7). This provision endorses a more flexible approach to water dependency. Contrary to Riverkeeper's interpretation, this provision states that a water-dependency finding "must be based on" the unavailability of "alternative[s]" and the project's ability to "avoid or minimize the adverse impact of the . . . encroachment upon the environment." *Id.* This language supports PADEP's interpretation. As contemplated by § 105.14(b)(7), PADEP's conclusion as to water-dependency was based on its finding

that no "alternative location, route or design" could avoid adverse impacts on aquatic sites and the environment. *Id.*[9]

In light of these conflicting provisions, we conclude that the meaning of "water dependent" in 25 Pa. Code § 105.18a(a)(2) is ambiguous. If we were reviewing an order of a federal agency, we would be required to defer to the agency's reasonable interpretation of its own regulations. *See Auer v. Robbins*, 519 U.S. 452 (1992). The question here is whether a *state* agency should receive similar deference. We conclude that such deference is appropriate.

Pennsylvania specifically recognizes *Auer*-style deference for its agencies. *See, e.g.*, *Buffalo Twp. v. Jones*, 778 A.2d 1269, 1276 n.8 (Pa. Commw. Ct. 2001) ("In reviewing an agency's interpretation of . . . its own regulations, unless the language is clear, we are required to defer to the agency's interpretation . . . ."), *aff'd*, 813 A.2d 659 (Pa. 2002). Nothing in the Natural Gas Act or our system of federalism compels us

---

[9] Riverkeeper attempts to downplay the significance of 25 Pa. Code § 105.14(b)(7) by arguing that it was not cross-referenced in the regulation at issue here, 25 Pa. Code § 105.18a(a)(2) (establishing special protections for exceptional-value wetlands). But § 105.14(b)(7) is part of a general provision that governs "reviewing a permit application under this chapter." The provision is thus arguably applicable even in the absence of an explicit cross-reference. Riverkeeper also objects that § 105.14(b)(7) favors its position because Tennessee Gas did not "demonstrate[]" the "unavailability" of the compression alternative. But that is a separate question that we will return to in the next section.

to strip a state agency of the deference it would otherwise receive in its own courts. This Court recognized similar deference in *Barnes v. Cohen*, which concluded that "the [Pennsylvania Department of Public Welfare's] interpretation of its own regulations is, of course, entitled to considerable deference. . . . [H]owever, we need not accept the agency interpretation if it is 'plainly erroneous or inconsistent with the regulation.'" 749 F.2d 1009, 1018 (3d Cir. 1984) (quoting *Bowles v. Seminole Rock & Sand Co.,* 325 U.S. 410, 414 (1945)); *accord Bldg. Trades Emp'rs' Educ. Ass'n v. McGowan*, 311 F.3d 501, 507 (2d Cir. 2002) ("We defer to a state agency's interpretation of its own regulations, unless the interpretation is arbitrary or capricious.").[10]

Applying that deferential standard, we conclude that PADEP's interpretation of water dependency is reasonable.

---

[10] State agencies' interpretations of *federal* law do not ordinarily receive deference. *See MCI Telecomm. Corp. v. Bell Atl. Pa.*, 271 F.3d 491, 516 (3d Cir. 2001). But some federal courts have shown deference to state agencies' interpretations of state law. *See, e.g., Arizona v. City of Tucson*, 761 F.3d 1005, 1014 (9th Cir. 2014) ("Federal courts generally defer to a state agency's interpretation of those statutes it is charged with enforcing, but not to its interpretation of federal statutes it is not charged with enforcing."); *City Of Bangor v. Citizens Commc'ns Co.*, 532 F.3d 70, 94 (1st Cir. 2008); *Mich. Bell Tel. Co. v. MCIMetro Access Transmission Servs., Inc.*, 323 F.3d 348, 357 (6th Cir. 2003); *Enter. Leasing Co. v. Metro. Airports Comm'n*, 250 F.3d 1215, 1217 (8th Cir. 2001).

First, as noted above, PADEP's flexible approach to water dependency is consistent with the text of 25 Pa. Code § 105.14(b)(7). That provision appears to be unique to Pennsylvania and is fully compatible with PADEP's interpretation.

Second, PADEP's flexible approach to water dependency is public and longstanding. *See, e.g.*, *Barnhart v. Walton*, 535 U.S. 212, 220 (2002) ("[T]his Court will normally accord particular deference to an agency interpretation of 'longstanding' duration." (quoting *North Haven Bd. of Ed. v. Bell*, 456 U.S. 512, 522 n.12 (1982))). In 1991, when the relevant regulations were first promulgated, PADEP stated its intention to evaluate the water dependency of linear infrastructure projects on a case-by-case basis. For example, in response to a public comment, PADEP stated that "[r]oads may be considered water dependent on a case by case basis." DEP Addendum 12; *see also* DEP Addendum 9 ("[T]he Department believes that haul roads, depending on their location, may be water dependent and will make that determination on a case by case basis."). Such case-by-case analysis belies the categorical approach urged by Riverkeeper.

And third, water dependency plays a different role in Pennsylvania's administrative scheme. Under the federal regulations, water dependency is a procedural consideration that affects the applicant's burden. *See* 40 C.F.R. § 230.10(a)(3). In Pennsylvania, water dependency is a substantive criterion that must be met in order to obtain certain Chapter 105 permits. *See* 25 Pa. Code § 105.18a(a)(2). Under Riverkeeper's categorical approach, some projects might be impossible to approve even if they would be environmentally

23

harmless. It stands to reason that PADEP would retain discretion to approve projects, such as this one, where no alternatives would minimize or avoid adverse impacts on the environment pursuant to 25 Pa. Code § 105.14(b)(7).

Thus, we conclude that PADEP did not act arbitrarily or capriciously by incorporating an alternatives analysis as part of its water-dependency finding. While PADEP's interpretation of water dependency appears to be unique, it is nonetheless reasonable in light of the text and structure of Pennsylvania's regulatory scheme. We will therefore defer to PADEP's interpretation and reject Riverkeeper's categorical approach.

B

Riverkeeper finally argues that, even if PADEP's water-dependency finding was not arbitrary or capricious, PADEP's alternatives analysis was erroneous. Specifically, Riverkeeper asserts that PADEP was required to embrace a compression alternative. That alternative would have increased the amount of natural gas transported through existing pipelines— avoiding all impacts on wetlands and waterbodies that would be caused by constructing new pipeline looping. We conclude, however, that PADEP considered the compression alternative and rejected it for reasons supported by the record.

In addition to certifying that the project is water dependent, PADEP must also certify that "[t]here is no [1] practicable alternative to the proposed project that [2] would not involve a wetland or that would have less effect on the wetland, and [3] not have other significant adverse effects on the environment." 25 Pa. Code § 105.18a(a)(3). That standard is almost identical

24

to its federal counterpart, 40 C.F.R. § 230.10(a), which we discussed at length in the companion case *Delaware Riverkeeper Network v. U.S. Army Corps of Engineers*, No. 17-1506 (3d Cir. 2017). There, we held that the United States Army Corps of Engineers did not arbitrarily or capriciously reject the compression alternative because the agency reasonably concluded that the compression alternative would have "other significant adverse effects on the environment." 40 C.F.R. § 230.10(a). We will uphold PADEP's decision for the same reason.

The compression alternative would "us[e] gas- and electric-powered turbines to increase the pressure and rate of flow at given points along the pipeline's route." *Del. Riverkeeper*, 833 F.3d at 369.[11] As part of its application to PADEP, Tennessee Gas included an alternatives analysis that rejected that approach. Tennessee Gas stated that "adding a new (greenfield) compressor station would require Tennessee [Gas] to obtain approximately 40-acres per site," and that construction "would require permanent vegetation clearing from the area in order to install permanent access roads, fencing, buildings and other appurtenance equipment . . . resulting in increased impacts to the environment." JA 266, 279. Tennessee Gas also observed that "a new (greenfield) compressor station would be an

---

[11] The parties focus primarily on building one or more new compressor stations rather than upgrading an existing station. *See Del. Riverkeeper Network v. U.S. Army Corps of Eng'rs*, No. 17-1506, slip op. at 6 n.3 (3d Cir. 2017) ("[U]pgrades to existing compressor stations, without looping, did not offer the same reliability and flexibility on the system."). We focus our analysis accordingly.

25

aboveground facility with light pollution and noise impacts and may also become a source of [greenhouse gas] emissions." *Id.* In contrast to those permanent environmental impacts, the land affected by construction "will be allowed to re-vegetate to minimize and mitigate possible environmental impacts." *Id.*; *see* JA 38 ("All disturbed wetland areas are to be restored to the original contours and shall be replanted with indigenous plant species."); JA 39 ("The permittee shall monitor the restored wetland areas within the ROW for a minimum of three growing seasons . . . .").

While PADEP did not explicitly mention compression in its alternatives analysis, it did consider "System Alternatives," i.e., alternatives that make use of existing transportation systems. JA 45, 176. Compression is one type of system alternative. *See* JA 294. PADEP also adopted Tennessee Gas's reasoning as its own: "The Department has reviewed [Tennessee Gas's] report and finds no cause to disagree with the conclusions and final alternative presented." *Id.*

As part of a checklist reflecting the criteria for approving projects that would affect exceptional-value wetlands, PADEP certified that the Orion Project is "the least environmentally damaging alternative." JA 49, 180. In support of that conclusion, PADEP references its alternatives analysis, which in turn adopted Tennessee Gas's reasoning. As discussed at length in the federal companion case, the agency's statement amounts to a judgment that the permanent environmental impacts from the compression alternative are "significant." *See Motor Vehicle Mfrs. Ass'n of U.S. v. State Farm Mut. Auto. Ins. Co.*, 463 U.S. 29, 43 (1983) ("We will . . . uphold a decision of less than ideal clarity if the agency's path may reasonably be

26

discerned." (quoting *Bowman Transp., Inc. v. Arkansas-Best Freight Sys., Inc.*, 419 U.S. 281, 286 (1974))).[12]

Accordingly, we conclude that PADEP did not arbitrarily or capriciously disregard the compression alternative.

IV

For the foregoing reasons, we will uphold PADEP's decision to issue the Chapter 105 permits and deny the petition for review.

---

[12] The permanent, "significant" environmental impacts of the compression alternative reasonably establish "demonstrated unavailability" under 25 Pa. Code § 105.14(b)(7). *See supra* note 9. PADEP's statement that there are no "practicable crossing alternatives," JA 49, 180, does not imply that its decision was based purely on costs or logistics. Rather, it reflects a judgment that "certain avoidance measures were not feasible because they were determined not to be as environmentally sound." JA 25; *see also* JA 141, 321 (discussing "other environmental impact considerations"). That approach is consistent with § 105.14(b)(7) and thus not arbitrary or capricious.