PRECEDENTIAL

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

Nos. 16-2211, 16-2212, 16-2218, 16-2400
_____

DELAWARE RIVERKEEPER NETWORK; DELAWARE
RIVERKEEPER MAYA VAN ROSSUM,
Petitioners No. 16-2211

LANCASTER AGAINST PIPELINES,
Petitioner No. 16-2212

GERALDINE NESBITT,
Petitioner No. 16-2218

SIERRA CLUB,
Petitioner No. 16-2400

v.

SECRETARY PENNSYLVANIA DEPARTMENT OF
ENVIRONMENTAL PROTECTION; PENNSYLVANIA
DEPARTMENT OF ENVIRONMENTAL PROTECTION,
Respondents


Transcontinental Gas Pipe Line Company, LLC,
Intervenor Respondent

_____

On Petition for Review of an Order of the Pennsylvania
Department of Environmental Protection
(FERC No. CP-15-138-000)
_____

Argued November 7, 2017

Before: JORDAN, HARDIMAN, and SCIRICA,
*Circuit Judges*

(Filed: September 4, 2018)

Aaron J. Stemplewicz        [Argued]
Delaware Riverkeeper Network
925 Canal Street, Suite 3701
Bristol, PA 19007
        *Attorney for Petitioners Delaware Riverkeeper*
        *Network and Delaware Riverkeeper Maya Van*
        *Rossum*

Mark L. Freed        [Argued]
Jordan B. Yeager
Curtin & Heefner
2005 South Easton Road, Suite 100
Doylestown, PA 18901
        *Attorneys for Petitioners Lancaster Against Pipelines*
        *and Geraldine Nesbitt*

Diana A. Csank
Zachary M. Fabish
Sierra Club Environmental Law Program
50 F Street NW, 8th Floor
Washington, DC 20001
    *Attorneys for Petitioner Sierra Club*

Alexandra C. Chiaruttini
Margaret O. Murphy
Pennsylvania Department of Environmental Protection
400 Market Street, P.O. Box 8469
Harrisburg, PA 17105

Joseph S. Cigan, III  [Argued]
Pennsylvania Department of Environmental Protection
2 Public Square
Wilkes-Barre, PA 18701

Curtis C. Sullivan
Pennsylvania Department of Environmental Protection
909 Elmerton Avenue, 3rd Floor
Harrisburg, PA 17110

Jesse C. Walker
Pennsylvania Office of Attorney General
Department of Environmental Resources
P.O. Box 8464
Harrisburg, PA 17105
    *Attorneys for Respondents*

Andrew T. Bockis
Saul Ewing Arnstein & Lehr
2 North Second Street
Penn National Insurance Plaza, 7th Floor
Harrisburg, PA 17101

Pamela S. Goodwin
Saul Ewing Arnstein & Lehr
650 College Road East, Suite 4000
Princeton, NJ 08540

Patrick F. Nugent
John F. Stoviak      [Argued]
Saul Ewing Artnstein & Lehr
1500 Market Street
Centre Square West, 38th Floor
Philadelphia, PA 19102

Elizabeth U. Witmer
Saul Ewing Arnstein & Lehr
1200 Liberty Ridge Drive, Suite 200
Wayne, PA 19087
        *Attorneys for Intervenor Respondent*

————————

OPINION OF THE COURT

————————

HARDIMAN, *Circuit Judge*.

These consolidated petitions for review concern the Atlantic Sunrise Project, an expansion of the natural-gas distribution network owned by Intervenor Transcontinental Gas Pipe Line Company (Transco). At issue is a decision of the Pennsylvania Department of Environmental Protection (PADEP or the Department) granting Atlantic Sunrise a Water Quality Certification under Section 401 of the Clean Water Act, 33 U.S.C. § 1341(a)(1).

In addition to their challenge to the merits of PADEP's decision to grant the Water Quality Certification, Petitioners raise an important jurisdictional question we left open in *Delaware Riverkeeper Network v. Secretary of Pennsylvania Department of Environmental Protection* (*Riverkeeper II*), 870 F.3d 171, 178 (3d Cir. 2017): whether our exclusive jurisdiction under the judicial review provisions of the Natural Gas Act, 15 U.S.C. § 717r(d), requires finality and how such a requirement would interact with Pennsylvania's administrative scheme.

For the reasons that follow, we hold that we have jurisdiction over the petitions and that Petitioners' challenges fail on the merits.

5

I

A

We begin with a brief overview of the regulatory background. The Natural Gas Act prohibits construction or operation of a natural gas pipeline without a Certificate of Public Convenience and Necessity from the Federal Energy Regulatory Commission (FERC). 15 U.S.C. § 717f(c)(1)(A). And since many other federal laws and regulations apply to pipeline projects, FERC often requires a showing of compliance with those other mandates as part of its permitting process. *See id.* § 717f(e) (authorizing FERC to grant Certificates subject to "reasonable terms and conditions"). FERC did so here, preventing Transco from starting construction on Atlantic Sunrise until it demonstrates "that it has received all applicable authorizations required under federal law." *Transcontinental Gas Pipe Line Co, LLC* (*Transco*), 158 F.E.R.C. ¶ 61125, at App. C ¶ 10 (2017).

One such authorization is a discharge permit under Section 404 of the Clean Water Act. 33 U.S.C. § 1344(a). Because obtaining a Section 404 permit is a federal requirement and the construction and operation of Atlantic Sunrise "may result in a[] discharge into . . . navigable waters," Transco must also comply with Section 401 of the Clean Water Act. *Id.* § 1341(a)(1). Section 401 requires permit applicants to obtain "a certification from the State in which the discharge . . . will originate . . . that any such discharge will comply with" that State's water-quality standards. *Id.* Because of these statutory requirements, Transco had to obtain a Water Quality Certification from PADEP before FERC would approve the pipeline project.

6

B

In an attempt to satisfy the obligations just described, in the spring of 2015 Transco applied both to FERC for a Certificate of Public Convenience and Necessity and to PADEP for a Water Quality Certification. Shortly thereafter, PADEP published notice in the *Pennsylvania Bulletin* (Pennsylvania's answer to the *Federal Register*) of its intent to grant Transco a Water Quality Certification. After a public comment period, the Department certified in April 2016 that Atlantic Sunrise would comply with Pennsylvania's water-quality standards if it satisfied certain conditions. Three of those conditions are relevant here, requiring Transco to obtain the following from PADEP:

1. a permit under the National Pollutant Discharge Elimination System, 25 PA. CODE §§ 92a.1–.104, covering the discharge of water during hydrostatic pipeline testing;

2. a permit under Chapter 102 of PADEP's own regulations, 25 PA. CODE §§ 102.1–.51, covering erosion and sediment disturbance associated with pipeline construction; and

3. a permit under Chapter 105 of the Department's regulations, 25 PA. CODE §§ 105.1–.449, covering obstructions of and encroachments on Pennsylvania waters.

7

In response to PADEP's notice, Petitioners immediately filed two parallel challenges to the approved Water Quality Certification. First, they sought relief directly from this Court under the exclusive review provision of the Natural Gas Act, 15 U.S.C. § 717r(d)(1). Second, three of the petitioners also appealed PADEP's decision to the Pennsylvania Environmental Hearing Board (EHB or the Board).[1] The Board has stayed its proceedings pending our jurisdictional ruling, so we turn to that issue now.

II

Under the Natural Gas Act, the courts of appeals have "original and exclusive jurisdiction over any civil action for the review" of a state administrative agency's "action" taken "pursuant to Federal law to issue . . . any . . . concurrence" that federal law requires for the construction of a natural-gas transportation facility. 15 U.S.C. § 717r(d)(1) (cross-referencing 15 U.S.C. § 717f). We have previously held that when PADEP issues a Water Quality Certification, it does so "pursuant to federal law," *Del. Riverkeeper Network v. Sec'y Pa. Dept. of Envtl. Prot.* (*Riverkeeper I*), 833 F.3d 360, 370–72 (3d Cir. 2016), and the parties do not dispute that federal law requires the Department to concur before construction on Atlantic Sunrise can move forward.

Nevertheless, Petitioners contend that we lack jurisdiction to review their claims. Relying on the First Circuit's decision in *Berkshire Environmental Action Team,*

---

[1] *See Lancaster Against Pipelines v. Commonwealth*, No. 2016-075-L (Pa. Envtl. Hrg. Bd.); *Nesbitt v. Commonwealth*, No. 2016-076-L (Pa. Envtl. Hrg. Bd.); *Sierra Club v. Commonwealth*, No. 2016-078-L (Pa. Envtl. Hrg. Bd.).

*Inc. v. Tennessee Gas Pipeline Co., LLC*, 851 F.3d 105 (1st Cir. 2017), they argue (1) that the Natural Gas Act permits this Court to hear suits challenging only a state agency's *final* action, and (2) that PADEP's Water Quality Certification is non-final until the EHB rules on Petitioners' administrative appeal. We address both issues in turn.

A

Like the petitions here, *Berkshire Environmental* involved the Natural Gas Act, the Clean Water Act, and a state's administrative procedures. In that case, FERC granted a pipeline company a Certificate of Public Convenience and Necessity subject to essentially the same condition imposed here—the company would have to demonstrate it had received all of its federal permits in order to build its pipeline. *Berkshire Environmental*, 851 F.3d at 107. The company subsequently applied for and received a Water Quality Certification from the Massachusetts Department of Environmental Protection (MassDEP) after a notice-and-comment procedure. *Id.* at 107–08. Under Massachusetts law, aggrieved parties then had 21 days to "appeal" that initial decision by demanding a hearing before MassDEP. *Id.* at 108, 112–13.

Like Transco here, the pipeline company argued that MassDEP had no authority to hear such an appeal in light of the First Circuit's original and exclusive jurisdiction under the Natural Gas Act. *Id.* at 108. And like Petitioners here, the challengers in *Berkshire Environmental* asked for a declaration that the Water Quality Certification would become final and reviewable by the Court of Appeals only at the conclusion of their state administrative appeals. *Id.* The First Circuit agreed with the challengers on the jurisdictional question, holding that

9

the Natural Gas Act permits review of only an agency's final decisions. *Id.* at 111.

Our sister court's reasoning is straightforward and persuasive: Although "[i]n a literal sense, state agencies repeatedly take 'action' in connection with applications for water quality certifications," Congress did not intend for us to "exercise immediate review over [the many] . . . preliminary . . . steps that state agencies may take in processing an application before they actually act in the more relevant and consequential sense of granting or denying it." *Id.* at 108. To be sure, the Natural Gas Act's reference to state "action" does not expressly restrict our review to an agency's ultimate decisions, but there is a "well-settled 'strong presumption that judicial review will be available only when agency action becomes final.' To say that silence on the subject implies no requirement of finality would be to recognize this 'strong presumption' only when it is of little benefit." *Id.* at 109 (quoting *Bell v. New Jersey*, 461 U.S. 773, 778 (1983)) (citations and alterations omitted). We therefore join the First Circuit in holding that the Natural Gas Act provides jurisdiction to review only "final agency action of a type that is customarily subject to judicial review." *Id.* at 111.

In resisting that conclusion, PADEP and Transco rely almost entirely on *Tennessee Gas Pipeline Co. LLC v. Delaware Riverkeeper Network*, 921 F. Supp. 2d 381 (M.D. Pa. 2013), which held that the Natural Gas Act gives this Court "an unqualified right of review" over even non-final Water Quality Certifications. *Id.* at 391. We reject that proposition. *Tennessee Gas* failed to acknowledge our longstanding presumption that Congress intends judicial review over only final administrative action. Instead, it framed the issue as whether to graft onto the Natural Gas Act a finality requirement

10

that the district court regarded as "originating in state law." *Id.* To be sure, deciding on a PADEP decision's finality requires reference to the Pennsylvania procedures that produced it. But it remains the case that the finality requirement itself, along with the presumption that Congress intended us to apply it, are creatures of federal, not state, law.

We are likewise unpersuaded by *Tennessee Gas*'s analysis of the Second Circuit's decisions in *Islander East Pipeline Co., LLC v. Connecticut Department of Environmental Protection*, 482 F.3d 79 (2d Cir. 2006), and *Islander East Pipeline Co., LLC v. McCarthy*, 525 F.3d 141 (2d Cir. 2008). In both *Islander* cases, the Second Circuit confronted a situation much like this one and proceeded without analysis, "as if there were no hurdles in appealing directly from the determination of a state administrative body." *Tennessee Gas*, 921 F. Supp. 2d at 393. Implicit in that course of action, the district court concluded, was a "determination that it is not necessary for a state administrative quasi-judicial body to first review the . . . issuance . . . of permits by a state administrative agency before judicial review . . . may be sought." *Id. Tennessee Gas* incorrectly treated the *Islander* cases, in which "jurisdiction [was] . . . assumed by the parties, and assumed without discussion by the court," as authority on the question presented here. *Goldman v. Citigroup Glob. Mkts. Inc.*, 834 F.3d 242, 251 (3d Cir. 2016). Such "drive-by jurisdictional ruling[s]" would have carried no precedential weight even had they been decided by *this* Court. *Id.*

B

We turn next to whether the Department's decision is a conclusive agency action, such that a "civil action for [its] review" is committed to our exclusive jurisdiction under the

11

Natural Gas Act. This is not the first time we have considered the finality of a PADEP Water Quality Certification issued for a federally-regulated pipeline. In *Riverkeeper II*, we held that such an approval was final and reviewable because the time to appeal to the EHB had already passed. 870 F.3d at 177. Noting the pendency of the petitions now before us—in which most of the Petitioners had already taken parallel protective appeals to the EHB—*Riverkeeper II* expressly declined to consider whether the availability of further state administrative review would render the Department's decision non-final. *Id.* at 178. We answer that question now.

The standard for whether agency action is final is a familiar one: "Final agency action 'must mark the consummation of the agency's decisionmaking process,' 'must not be of a merely tentative or interlocutory nature,' and 'must be one by which rights or obligations have been determined, or from which legal consequences will flow.'" *Id.* at 176 (quoting *Bennett v. Spear*, 520 U.S. 154, 177–78 (1997)) (internal quotation marks omitted); *accord Berkshire Environmental*, 851 F.3d at 111.[2] Although the decisionmaking process we are reviewing is defined by Pennsylvania law, we nevertheless

_____

[2] We recognize that many (if not most) decisions addressing administrative finality arise in the context of the Administrative Procedure Act, *see* 5 U.S.C. § 704, rather than agency-specific review provisions like the one we consider here. Nevertheless, we think that the case law evaluating finality under the APA is instructive, and see no reason why finality under the Natural Gas Act should be evaluated any differently. We will therefore follow *Riverkeeper II*'s approach of measuring finality in this context against "the traditional hallmarks of final agency action." 870 F.3d at 178.

apply a federal finality standard to determine whether Congress has made the results of that process reviewable under the Natural Gas Act.

We begin by surveying Pennsylvania's procedures for obtaining and appealing a Water Quality Certification. First, the applicant submits a request to PADEP. PENNSYLVANIA DEPT. OF ENVTL. PROT. BUREAU OF WATER QUALITY PROTECTION, NO. 362-2000-001, PERMITTING POLICY AND PROCEDURE MANUAL [hereinafter PERMITTING MANUAL] § 400 at 6. The Department places a notice in the *Pennsylvania Bulletin*, beginning a 30-day comment period. *Id.* PADEP then makes its decision, and "[t]he issuance or denial of [the] Water Quality Certification[] . . .is published in the Pennsylvania Bulletin as a final action of the Department." *Id.* Aggrieved parties have 30 days from the date of publication to file an appeal to the EHB. 25 PA. CODE § 1021.52(a)(1), 2(i).

The EHB is wholly separate from PADEP. The Board is an "independent quasi-judicial agency," 35 PA. STAT. ANN. § 7513(a), and its members—full-time administrative law judges—are appointed by the Governor of Pennsylvania without any involvement by either PADEP or the state's Secretary of Environmental Protection, *id.* § 7513(b). Final orders of the EHB may be appealed to the Commonwealth Court. 42 PA. CONS. STAT. § 763(a)(1).

Two features of the Board's review deserve special mention. First, an appeal to the EHB does not prevent PADEP's decision from taking immediate legal effect. The statute creating the Board expressly provides that "[n]o appeal shall act as an automatic supersedeas," 35 PA. STAT. ANN. § 7514(d)(1), and the EHB itself regards it as "axiomatic that the mere pendency of litigation before the Board . . . has no

13

effect on the validity or viability of the Department action being appealed . . . . An appeal to the Board does not operate as a stay," *M&M Stone Co. v. Commw. of Pa., Dept. of Envtl. Prot.*, EHB Docket No. 2007-098-L, 2009 WL 3159149, at *3 (Pa. Envtl. Hrg. Bd. Sept. 7, 2009) (citations omitted). Second, the EHB's review of PADEP decisions is conducted largely de novo, with parties entitled to introduce new evidence and otherwise alter the case they made to the Department. While Pennsylvania law refers to proceedings before the EHB as an "appeal," the Commonwealth Court has explained that the Board is not an "appellate" tribunal in the ordinary sense of that term. The Board does not have "a limited scope of review attempting to determine if [PADEP]'s action can be supported by the evidence received . . . [by PADEP]. Rather, the [Board's] duty is to determine if [PADEP]'s action can be sustained or supported by the evidence taken *by the* [*Board*]." *Leatherwood, Inc. v. Commw., Dept. of Envtl. Prot.*, 819 A.2d 604, 611 (Pa. Commw. Ct. 2003) (emphasis added) (citation omitted).

Once again relying heavily on *Berkshire Environmental*, Petitioners claim we may not review PADEP's issuance of a Water Quality Certification until the Board adjudicates their appeal. After holding that its jurisdiction under the Natural Gas Act covered only final action, the First Circuit concluded that the Massachusetts Water Quality Certification then under its review was non-final so long as the petitioners could still appeal within MassDEP. Citing similarities between the Massachusetts and Pennsylvania procedures, Petitioners ask us to reach the same conclusion here. We disagree, primarily because there are important distinctions between the Massachusetts and Pennsylvania schemes.

14

Two aspects of Pennsylvania's system for issuing Water Quality Certifications distinguish PADEP's decision from the non-final one in *Berkshire Environmental*. First, the Department's decision here was immediately effective, notwithstanding Petitioners' appeals to the EHB. The Department's decision was neither "tentative [n]or interlocutory" and was one "from which legal consequences . . . flow[ed]." *Riverkeeper II*, 870 F.3d at 176 (quoting *Bennett*, 520 U.S. at 177–78) (internal quotation marks omitted). The First Circuit, by contrast, faced a Massachusetts regulatory regime in which the agency's initial decision was ineffective until either the time to appeal expired or a final decision on appeal issued. *See* 310 MASS. CODE REGS. 9.09(1)(e); *see also Berkshire Envtl.*, 851 F.3d at 108 (noting that the Water Quality Certification expressly forbade any work under its auspices until "the expiration of the Appeal Period . . . and any appeal proceedings"). Put another way, *Berkshire Environmental* addressed a provisional order that could become final in the absence of an appeal, while we are presented with a final order that could be overturned in the event of an appeal. In that regard, PADEP's order is no less final for the availability of EHB review than a federal agency's is for the availability of review in this Court.

Second, unlike in Massachusetts, Pennsylvania law does not "make[] clear that [Transco]'s application seeking a . . . water quality certification initiated a single, unitary proceeding" taking place within one agency and yielding one final decision. *Berkshire Envtl.*, 851 F.3d at 112. Quite the opposite. The Department and the Board are entirely independent agencies. Each conducts a separate proceeding, under separate rules, overseen by separately appointed officers. *Compare* 25 PA. CODE. Part I (Department of Environmental

15

Protection), *with* 25 PA. CODE. Part IX (Environmental Hearing Board). Both in formal terms, *see* PERMITTING MANUAL, *supra*, § 400 at 6 (noting that publication in the *Pennsylvania Bulletin* marks a "final action of the Department"), and in the immediate practical effect discussed above, PADEP's issuance of a Water Quality Certification is that agency's final action, leaving nothing for the Department to do other than await the conclusion of any proceedings before the Board.[3]

Whether state law permits further review by the same agency that makes the initial decision or provides for an appeal to a structurally-separate body is probative of whether that decision is final. Finality, at bottom, is "concerned with whether the *initial decisionmaker* has arrived at a definitive

---

[3] Petitioners emphasize another parallel between EHB review in Pennsylvania and an adjudicatory hearing in Massachusetts: both conduct de novo review without deference to the appealed decision. And to be sure, the First Circuit relied in part on the fact that "the adjudicatory hearing [was] a review of [the pipeline company]'s application, rather than a review of a prior agency decision." *Berkshire Envtl.*, 851 F.3d at 112. But the court in *Berkshire Environmental* did not rely on the fact of de novo review for its own sake in finding the agency's initial decision non-final. Rather, it concluded that the decision was non-final because several features of Massachusetts's administrative scheme—de novo review among them—combined to produce a "review" process that "continue[d] more or less as though no decision ha[d] been rendered at all." *See id.* The same cannot be said of review by the EHB in Pennsylvania, which takes place after a decision that has immediate legal effect.

16

position on the issue," and PADEP has said its piece regardless of whether Pennsylvania law gives a different agency the last word. *Williamson Cty. Reg'l Planning Comm'n v. Hamilton Bank of Johnson City*, 473 U.S. 172, 193 (1985) (emphasis added). In that respect, finality is "conceptually distinct" from the related issue of exhaustion of administrative remedies. *Id.* at 192–93. Here, Petitioners confine themselves to challenging the finality of PADEP's decision, and do not argue that we lack jurisdiction because of a failure to exhaust an appeal to the EHB.

Petitioners do not rest exclusively on the comparison between this case and *Berkshire Environmental*. Nevertheless, we find their other arguments no more persuasive.

Petitioners are incorrect that the Department's decision is non-final for purposes of this Court's review because a Pennsylvania statute provides that "no action of [PADEP] shall be final as to [a] person until the person has had the opportunity to appeal the action to the [EHB]" or the time to appeal has expired. 35 Pa. Stat. Ann. § 7514(c). Despite this language, Pennsylvania cannot declare when and how an agency action taken pursuant to federal law is sufficiently final to be reviewed in federal court. State law's use of the word "final" to characterize an agency's decision is irrelevant in that context, except so far as that language is relevant to the substantive effect of the order in question and the practical character of the procedures surrounding it. Here, those underlying realities indicate that PADEP has taken final action.

Nor does due process require that Petitioners have an opportunity to present evidence at a hearing before the EHB. "There are instances in which due process requires that an agency afford an adversarial mode of procedure and an

17

evidentiary hearing," but this "is not such an instance." *See Nat'l Labor Relations Bd. v. ARA Servs., Inc.*, 717 F.2d 57, 67 (3d Cir. 1983). The essence of due process is notice and an opportunity to be heard, and with respect to decisions like the one under review here, the public comment period provided Petitioners "with meaningful hearing rights sufficient under the circumstances to protect [their] interests." *See Bank of N. Shore v. Fed. Deposit Ins. Corp.*, 743 F.2d 1178, 1184 (7th Cir. 1984). Due process does not entitle Petitioners to a de novo evidentiary hearing; the opportunity to comment and to petition this Court for review is enough.

Notwithstanding the availability of an appeal to the EHB, PADEP's issuance of a Water Quality Certification was final in precisely the most important ways that the permit in *Berkshire Environmental* was not. The Department's action presents all the "traditional hallmarks of final agency action," *Riverkeeper II*, 870 F.3d at 178, and we have exclusive jurisdiction to hear any "civil action for the review" of such a decision. We now turn to Petitioners' challenges to the merits of the Department's decision.

### III

Petitioners make four separate arguments on the substance of their claims.[4] First, they claim PADEP failed to provide the public notice the Clean Water Act requires prior to issuing a Water Quality Certification. Second, they contend the Department acted arbitrarily and capriciously by issuing a Water Quality Certification that was immediately effective despite being conditioned on Transco obtaining additional

---

[4] Not every petitioner joins in every argument. For the sake of simplicity we refer generically to "Petitioners."

permits in the future. Third, pointing out that PADEP's approval was necessary for Transco to begin eminent domain proceedings under the Natural Gas Act, Petitioners argue that the Department's decision deprived them of due process and violated the Fifth Amendment's Takings Clause. Finally, Petitioners assert that the Department's action violated its obligation to safeguard the Commonwealth's natural resources under Article I, Section 27 of the Pennsylvania Constitution. We address these arguments *seriatim*.

A

The Clean Water Act obliges state agencies to comply with a number of procedural requirements before issuing a Water Quality Certification. As relevant here, Section 401 requires PADEP to "establish procedures for public notice in the case of all applications for certification." 33 U.S.C. § 1341(a)(1). No party disputes that the Department has a longstanding written policy, published in its Permitting Manual, that when it "receives a request for Water Quality Certification, a notice is published in the *Pennsylvania Bulletin* for a 30-day comment period." PERMITTING MANUAL, *supra*, § 400 at 6. And no party disputes that the Department followed that policy here. Nevertheless, Petitioners claim it was insufficient to satisfy Section 401. We disagree.

First, Petitioners cite several cases in which "[c]ourts have found that Section 401(a)(1)'s notice requirements are met where the state codifies the notice requirements by statute or regulation." Riverkeeper Br. 25–26. But none of those decisions—and nothing in the text of the Clean Water Act— requires a State to establish its notice procedures by way of *regulation*. The fact that formal rulemaking is sufficient to

19

satisfy the requirement of established notice procedures does not mean it is necessary.

Second, Petitioners claim this Court has already "held" that PADEP has "failed to 'establish' procedures for public notice" under Section 401. Riverkeeper Br. 26–27. Petitioners' only support for that claim is a single clause in our decision in *Riverkeeper I*: "PADEP has not published any procedures for issuing Water Quality Certifications." 833 F.3d at 385. Reading that clause in context, however, makes clear that it does not refer to PADEP's procedures for providing public notice of Section 401 applications. Indeed, PADEP's *notice* procedures were not at issue in that case. Rather, we considered PADEP's procedures for *processing* such applications—what information the agency would gather and evaluate before issuing a Water Quality Certification. *Id.* at 385–86. Contrary to Petitioners' suggestion, we have never held anything with respect to PADEP's notice procedures.

Third, Petitioners suggest that "PADEP itself has implicitly conceded" its failure to establish adequate notice procedures by publishing a draft of new procedures for considering Section 401 Certifications, including notice procedures. Riverkeeper Br. 27–28. We are unpersuaded. The Department has not conceded that its existing notice procedures are legally inadequate by moving to promulgate a single set of rules governing the entire Water Quality Certification process.

Finally, Petitioners contend that Section 401 required PADEP to immediately give full notice not only of Transco's application for a Water Quality Certification, but also of the three substantive permits on which the Department proposed to condition its approval. That argument also fails. Notice need

20

only be adequate to allow interested parties to participate meaningfully in the process that is actually pending, and PADEP's process for granting Water Quality Certifications does not involve immediate consideration of any substantive permits. This Court approved that arrangement just two years ago, holding that when the Department conditions a Certification on the later acquisition of other permits, the agency may issue the Certification without engaging in the substantive review that will eventually be required to grant the permits. *Riverkeeper I*, 833 F.3d at 387–88. Since PADEP is not required to conduct that review at this stage, it would make little sense to require it to provide notice of the same.

B

Petitioners also assert that the Department's decision to issue a Water Quality Certification now, conditioned on Transco obtaining substantive permits later, was arbitrary, capricious, or otherwise not in accordance with law. Petitioners make two versions of that argument. First, they claim PADEP's decision was arbitrary because it certified Atlantic Sunrise's water quality compliance based on a pledge that Transco would demonstrate substantive compliance in a future permit application rather than in the application for the Water Quality Certification itself. Without that present demonstration of compliance, Petitioners argue, PADEP's decision that Atlantic Sunrise would comply with Pennsylvania water quality standards could not have been based on anything but guesswork. Second, Petitioners say the Department failed to follow its own procedures, which they claim require the agency to consider applications for Water Quality Certifications simultaneously with any applicable substantive permits.

21

Both of those arguments—which at bottom focus on the timing rather than the substance of the Department's decision—are foreclosed by our decision in *Riverkeeper I*. In that case, we held that PADEP's preferred procedure for considering Certifications along with other permits was not arbitrary or capricious because—since no construction can begin before the Department grants the substantive permits, and all interested parties will have a full opportunity to weigh in when PADEP considers applications for those permits—the petitioners could not show they had been harmed by the Department's sequencing choice. *Riverkeeper I*, 833 F.3d at 386–87. The same analysis applies with equal force here. Petitioners attempt to distinguish this case by arguing that they have been harmed by the Department's choice not to provide notice of the substantive permits upon which it conditioned the Water Quality Certification. But as we discussed herein, Petitioners will suffer no harm from PADEP's decision to provide notice of those permits at the time it actually considers them.

C

Petitioners next argue that PADEP's issuance of a conditional Water Quality Certification violates the Takings Clause of the Fifth Amendment and the Due Process Clause of the Fourteenth Amendment. Under the Natural Gas Act, any natural gas company holding a Certificate of Public Convenience and Necessity may acquire a pipeline right-of-way through eminent domain. 15 U.S.C. § 717f(h). The Certificate of Public Convenience and Necessity establishes the legal right to take property; in a condemnation proceeding under the Natural Gas Act, the "only open issue [is] the compensation the landowner defendant will receive in return for the easement." *Columbia Gas Transmission, LLC v. 1.01*

*Acres, More or Less in Penn Twp., York Cty., Pa., Located on Tax ID #440002800150000000 Owned By Brown*, 768 F.3d 300, 304 (3d Cir. 2014). Petitioners assert that PADEP violated the Fifth and Fourteenth Amendments when it issued a conditional Water Quality Certification—a condition precedent for initiating eminent domain proceedings under Transco's Certificate of Public Convenience and Necessity—based on a relatively restricted administrative process.

Regardless of its underlying merits, and setting aside questions about whether the Clean Water Act could ever provide a vehicle to raise a takings argument, *see Gunpowder Riverkeeper v. FERC*, 807 F.3d 267, 274–75 (D.C. Cir. 2015) (concluding that "an injury arising specifically by reason of eminent domain" falls outside the zone of interests protected by the statute), that claim cannot succeed because Petitioners have presented it in the wrong forum. Their argument does not challenge PADEP's judgment that Transco will comply with Pennsylvania's water-quality standards. Nor does it ask this Court to review the Department's reasoning, its procedures, or the facts on which it based its decision. Rather, Petitioners' eminent-domain argument is in substance a challenge to FERC's order granting a Certificate of Public Convenience and Necessity. And that order may only be challenged by a request for rehearing before FERC itself, or by a petition for review by an appropriate federal circuit court. *See* 15 U.S.C. § 717r(a)–(b); *Williams Nat. Gas Co. v. City of Okla. City*, 890 F.2d 255, 264 (10th Cir. 1989). Petitioners respond, in essence, that those avenues are inadequate because if Petitioners took advantage of them, Transco would resist and Petitioners might lose. That argument refutes itself.

D

Petitioners' final argument—that PADEP failed to comply with its obligations under the Pennsylvania Constitution—also fails. Article I, Section 27 of the Pennsylvania Constitution establishes a common right to the Commonwealth's natural resources and obligates its government to hold those resources in trust. Petitioners argue that PADEP failed to live up to that obligation when it issued a Water Quality Certification conditioned on Transco later obtaining certain substantive permits.

Transco responds that a state constitutional claim is not cognizable in this proceeding, arguing that by vesting jurisdiction in this Court to review PADEP's Certification decision, the Natural Gas Act provides for only a narrow scope of review that does not permit us to hear state-law claims. Transco points to § 717r(d)(3) of the Act, which states that if the reviewing court of appeals finds that an agency's action was "inconsistent with the Federal law governing such permit *and* would prevent the construction, expansion or operation of the facility . . . , the Court shall remand the proceeding to the agency." 15 U.S.C. § 717r(d)(3) (emphasis added). In Transco's view, the statute's requirement that we remand to the agency when certain conditions are met implies that remand is the only remedy available to us, and then only under the conditions just quoted. Therefore, Transco asserts, we may not reach the merits of Petitioners' claim under the Pennsylvania Constitution. We cannot agree.

The provision of the Natural Gas Act that actually grants us jurisdiction, 15 U.S.C. § 717r(d)(1), is quite capacious. It empowers us to hear "any civil action" seeking "review" of federal permits required by interstate pipelines.

24

And ordinarily, when such agency action is "made reviewable by statute," 5 U.S.C. § 704, the Administrative Procedure Act authorizes a broad scope of review, without limiting courts to considering only federal law, *see id.* § 706. Nothing in § 717r(d)(3) says differently; it simply requires reviewing courts to apply a particular remedy when certain conditions are met. It says nothing about other circumstances, and we will not imply from the statute's silence that Congress intended to restrict the language of its text. Congress does not "hide elephants in mouseholes." *Whitman v. Am. Trucking Ass'ns. Inc.*, 531 U.S. 457, 468 (2001).[5]

Nevertheless, Petitioners' claim under the Pennsylvania Constitution cannot succeed on the merits. Petitioners essentially complain that PADEP could not have met its obligation to safeguard Pennsylvania's natural resources because it granted a Water Quality Certification before collecting the environmental impact data that would be required to issue the substantive permits on which it was conditioned. That fails for the same reason that we rejected Petitioners' argument that PADEP's decision to grant a Water Quality Certification conditioned on obtaining other permits was arbitrary and capricious. *See supra* III.B. Because Transco will have to obtain those substantive permits to begin construction—and PADEP will have to consider Article I,

---

[5] The United States Court of Appeals for the Fourth Circuit has recently reached the same conclusion. *Sierra Club v. U.S. Dep't of the Interior*, — F.3d —, 2018 WL 3717067, at *25 (4th Cir. Aug. 6, 2018) (holding that when an agency's action would not "prevent the construction" of a pipeline, § 717r(d)(3) did not apply and "the APA's default rule" governed)

Section 27 in deciding whether to grant or deny them—Petitioners cannot show that they have been harmed by the Department's decision to issue a conditional Water Quality Certification.

* * *

For the reasons stated, we will deny the petitions for review.