**NOT PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 17-3299
_____

DELAWARE RIVERKEEPER NETWORK; DELAWARE RIVERKEEPER; MAYA
VAN ROSSUM,
Petitioners

v.

SECRETARY PENNSYLVANIA DEPARTMENT OF ENVIRONMENTAL
PROTECTION; PENNSYLVANIA DEPARTMENT OF ENVIRONMENTAL
PROTECTION,
Respondents

TRANSCONTINENTAL GAS PIPELINE COMPANY, LLC
Intervenor
_____

On Petition for Review of an Order of the Pennsylvania
Department of Environmental Protection
(File No. PAG109623)
_____

Submitted Under Third Circuit L.A.R. 34.1(a)
April 26, 2019

Before: SMITH, *Chief Judge*, CHAGARES, FUENTES, *Circuit Judges*

(Filed August 15, 2019)
_____

OPINION[**]
_____

---

[**] This disposition is not an opinion of the full Court and pursuant to I.O.P. 5.7 does not constitute binding precedent.

FUENTES, *Circuit Judge*.

Petitioner Delaware Riverkeeper[1] has challenged the decision of Respondent Pennsylvania Department of Environmental Protection to allow the Transcontinental Gas Pipe Line Company (or "Transco") to discharge water used to conduct hydrostatic testing of Transco's pipeline.[2] The Department's approval came after Transco submitted a Notice of Intent to comply with a general permit issued by the Department to regulate all such hydrostatic testing statewide. Delaware Riverkeeper argues that this process violates a number of regulatory and statutory requirements. Riverkeeper also argues that the case is not ripe for review.

This Court has recently resolved the question of ripeness in a parallel proceeding.[3] We follow that precedent in concluding we have jurisdiction over this case as well. As explained in this decision, we further conclude that Riverkeeper's challenge fails on the merits. We will therefore deny the petition for review.

**I.**

---

[1] For simplicity, we refer to Petitioners Delaware Riverkeeper Network, The Delaware Riverkeeper, and Maya Van Rossum together as "Delaware Riverkeeper" or "Riverkeeper."

[2] Transco has intervened in this litigation.

[3] *Delaware Riverkeeper Network v. Sec'y Pa. Dep't of Envtl. Prot.*, 903 F.3d 65, 70-75 (3d Cir. 2018) (*Riverkeeper III*). This is the latest in a series of similar cases, including *Delaware Riverkeeper Network v. Secretary Pennsylvania Department of Environmental Protection*, 833 F.3d 360 (3d Cir. 2016) (*Riverkeeper I*), and *Delaware Riverkeeper Network v. Secretary Pennsylvania Department of Environmental Protection*, 870 F.3d 171 (3d Cir. 2017) (*Riverkeeper II*).

2

The Natural Gas Act provides a comprehensive statutory scheme to regulate interstate natural gas sales and transportation.[4] That Act gives the Federal Energy Regulatory Commission ultimate authority to oversee the process and ensure that a proposed project complies with the web of subsidiary and complementary authorities that govern such an undertaking,[5] such as the federal Clean Water Act.[6] No party may build a pipeline without receiving a "certificate of public convenience and necessity" from the Commission.[7]

States also retain authority in this process.[8] For example, no company can build a pipeline without approval from any affected states that the proposed pipeline complies with the Clean Water Act, as well as any other state water quality standards.[9] States may place limitations on these certifications, which "become a condition on any [f]ederal license or permit."[10] The Pennsylvania Department of Environmental Protection controls state water quality approvals in that state.[11] Parties can appeal any Department decision to Pennsylvania's Environmental Hearing Board.[12]

Here, to obtain final approval to build a pipeline that would run through Pennsylvania, Transco requested a "water quality certification" from the Department,

---

[4] 15 U.S.C. § 717(b).
[5] *Id.* § 717n(b).
[6] *See* 33 U.S.C. § 1341.
[7] 15 U.S.C. § 717f(c)(1)(A).
[8] *See id.* § 717b(d); 33 U.S.C. § 1341.
[9] 33 U.S.C. § 1341(a)(1). States may waive this authority. *See id.*
[10] *Id.* § 1341(d).
[11] 35 Pa. Stat. and Con. Stat. Ann. § 691.5.
[12] 25 Pa. Code § 1021.52(a).

which would certify that the pipeline conforms with the Clean Water Act and other state water-quality standards.[13]

The Department, after a period of notice and comment, issued a final certification.[14] The Department conditioned its certification on Transco's ability to meet certain other requirements; among others, Transco needed to acquire and comply with a permit to discharge water used in hydrostatic testing.[15] Hydrostatic testing is a process by which water is pumped into pipes to check them for strength or leaks. A hydrostatic testing permit would allow Transco to discharge the water once the test was finished.

The Department uses what is known as a general permitting system for hydrostatic testing. The general permit system increases administrative processing speeds for functionally similar activities—such as hydrostatic testing. "General permitting has long been recognized as a lawful means of authorizing discharges."[16] Rather than issue individual permits to every entity that wishes to hydrostatic test, the Department issues what is known as a "general permit." A general permit establishes the requirements that all entities wishing to hydrostatic test must meet.[17] That general permit undergoes a public notice period and is then promulgated, like any other regulation.[18]

---

[13] 45 Pa. Bull. 3274 (June 20, 2015); JA057-119; *see* 33 U.S.C. § 1341(a)(1).

[14] 46 Pa. Bull. 2132-33 (Apr. 23, 2016).

[15] This application is required under Pennsylvania's Clean Streams Law, Act of June 22, 1937, P.L. 1987, *as amended* 35 Pa. Stat. and Con. Stat. Ann. §§ 691.1-691.1001, § 691.402; and associated regulations, 25 Pa. Code § 92a.

[16] *Envtl. Def. Ctr., Inc. v. EPA*, 344 F.3d 832, 853 (9th Cir. 2003) (citing *Nat. Res. Def. Council, Inc. v. Costle*, 568 F.2d 1369 (D.C. Cir. 1977)).

[17] *See* 25 Pa. Code § 92a.54(b).

[18] *Id.* § 92a.84(a), (b).

Once the permit is in force, entities seeking approval under it may submit a "Notice of Intent" detailing how they intend to meet the general permit's requirements.[19] Assuming the Notice of Intent conforms with the permit, the Department approves the Notice and the entity is covered under the general permit.

Transco followed this process here, and submitted a Notice of Intent to comply with the Department's general hydrostatic discharge permit. The Department determined that Transco was eligible for coverage under that permit, and, in April 2017, published a notice to that effect. Riverkeeper challenged that conclusion, and in October 2017, filed the petition for review before us now. It contends that this permitting process circumvents required public notice periods that would have allowed it to comment on Transco's plans.

## II.

Riverkeeper's petition has both a jurisdictional and substantive component. Although it filed the petition for review, Riverkeeper asserts that this issue is not ripe before the Court. Riverkeeper also challenges the Department's actions on the merits. We consider each in turn.

### A. Jurisdiction

The Natural Gas Act provides us with original and exclusive jurisdiction to hear "any civil action for the review of an order or action of a . . . State administrative agency . . . to issue, condition, or deny any permit, license, concurrence, or approval."[20] Despite this broad grant of review, Riverkeeper argues that the Court lacks jurisdiction to hear its

---

[19] *Id.* § 92a.23.
[20] 15 U.S.C. § 717r(d)(1).

petition because the matter is not ripe. It asserts that the Department's decision must be first reviewed by Pennsylvania's Environmental Hearing Board, and is therefore not a final order or action. However, we have previously addressed this question in *Riverkeeper III*.[21] There, we held that a final decision by the Department is a final agency action and is ripe for review.[22] The Department's decisions are "immediately effective" and "[t]he Department and the Board are entirely independent agencies."[23] Riverkeeper gives us no reason to disturb that conclusion here. Its petition is ripe, and we have jurisdiction to hear the merits of the claim.

### B. Riverkeeper's Merits Arguments

When reviewing an agency action on the merits, the Court reviews interpretation of federal law de novo and reviews agency decisionmaking under an arbitrary and capricious standard.[24] Riverkeeper "is not challenging the Department's formulation of the . . . general permit itself."[25] The gravamen of Riverkeeper's petition here is that the Department, by accepting Transco's Notice of Intent to comply with the general hydrostatic testing permit, failed to follow necessary procedures, particularly those related to public participation. Riverkeeper identifies several ways in which it believes the Department violated the law by approving Transco's Notice.

---

[21] 903 F.3d at 70-75.
[22] *Id.* at 74-75.
[23] *Id.* at 73.
[24] 5 U.S.C. § 706; *Riverkeeper I*, 833 F.3d at 377.
[25] Pet'rs' Br. at 19.

First it argues that three different sections of the Clean Water Act required the Department to allow a public notice and comment period before accepting Transco's Notice. They are: (1) 33 U.S.C. § 1342(a)(1), which requires a public hearing before a discharge permit may be issued;[26] (2) § 1251(e), which "provide[s] for [and] encourage[s]" "public participation in the development, revision, and enforcement of any regulation, standard, effluent limitation, plan, or program;" and (3) § 1342(j), which requires that "[a] copy of each permit application and each permit shall be available to the public."

However, the Department did hold a public notice period—prior to finalizing the general hydrostatic testing permit. At that point the public was on notice that the Department would approve hydrostatic testing discharges into the state waterways based on the promulgated criteria. The Department's approval of Transco's Notice is not a separate permit; it is simply a confirmation that Transco's plan conforms with the general permit's requirements. All substantive requirements appear in the general permit, and Transco's Notice simply shows it intends to comply with those standards.

The Notice could nevertheless be an "application" for a permit. If it was, then under § 1342(j) a copy of it must have been made publicly available. Further, if the Notice was a permit application, then it would follow that the Department's approval would be a permit—triggering §§ 1342(a)(1) & 1251(e)'s notice requirements.

However, the Notice is not an application. The Pennsylvania Code defines a Notice of Intent as "[a] complete form submitted for . . . general permit coverage which contains

---

[26] 33 U.S.C. § 1342(a)(1) ("[T]he Administrator may, after opportunity for public hearing issue a permit for the discharge of any pollutant . . . .").

information required by the terms of the permit and by § 92a.54 (relating to general permits). An NOI is not an application."[27]

Riverkeeper argues that the Notice is nevertheless the "functional equivalent" of an application.[28] It points to two cases—*Environmental Defense Center, Inc. v. EPA*[29] and *Waterkeeper Alliance, Inc. v. EPA*[30]—in which other Circuits found that similar Notices were the equivalent to permit applications.[31] *EDC*, upon which *Waterkeeper* relies, found that "clear Congressional intent requires that [Notices] be subject to the Clean Water Act's public availability and public hearings requirements."[32]

However, what distinguishes both *EDC* and *Waterkeeper* is that, in both cases, the Notices contained significant material information not found in the respective general permits. The *EDC* court recognized that the permitting system before it "differ[ed] from the traditional general permitting model," because under that scheme it was the Notices, "and not the general permits, that contain the substantive information about how the operator" would comply with the relevant limitations.[33] The same was true in *Waterkeeper*,

---

[27] 25 Pa. Code § 92a.2. Riverkeeper identifies many instances in which the Department calls a Notice an "application" in guidance documents. However, Riverkeeper does not explain why these statements would supersede the codified statement found in § 92a.2. At best, this argument goes to whether a Notice is the "functional equivalent" to an application.

[28] Pet'r Br. 39.

[29] 344 F.3d 832 (9th Cir. 2003) ("*EDC*").

[30] 399 F.3d 486 (2d Cir. 2005) ("*Waterkeeper*").

[31] Riverkeeper also cites to several non-Pennsylvania state law cases, which are not relevant to the issue at hand.

[32] 344 F.3d at 856.

[33] *Id.* at 853, 857.

which involved a general permit for animal feeding operations.[34] The court concluded that animal nutrition management programs, included in notices but not in the general permit, constituted effluent limits that substantively impacted the effect of each individual discharge.[35] The court invalidated the associated rule after concluding that the EPA "fail[ed] to require that the terms of the nutrient management plans be included in [the general] permits."[36]

Riverkeeper has not identified ways in which the required Notices include the kind of unique substantive information absent from the general hydrostatic testing permit, as was the case in *EDC* and *Waterkeeper*. While Riverkeeper points to significant "site-specific scientific and technical information" provided in the Notices, it admits that this information was included "to demonstrate compliance with numerous substantive criteria for coverage under the [general] permit."[37] In other words, the situation here follows the "traditional model," in which the substantive information is found in the general permit, not the Notices. The notice requirements found in §§ 1342(a)(1), 1251(e), and 1342(j) of the Clean Water Act are therefore not applicable to Transco's Notice.

Finally, Riverkeeper also argues that the Department violated Section 401(a)(1) of the Clean Water Act when it issued Transco's water quality certificate. That Section requires the Department to "establish procedures for public notice in the case of all

---

[34] 399 F.3d at 490.
[35] *Id.* at 502.
[36] *Id.* at 503.
[37] Pet'rs' Reply at 10, 11.

applications for certifications."[38]  Riverkeeper argues that the Department violated this Section because it issued Transco's certification conditionally upon Transco also receiving permits for, *inter alia*, hydrostatic testing.  Riverkeeper asserts that the Department "provided notice of only the conditional Section 401 water quality certificate—and not the underlying substantive state permits."[39]

This is a variant of the same argument we have previously addressed in several other cases between these parties.  We have held that the Department's "preferred procedure for considering Certifications along with other permits was not arbitrary and capricious because . . . no construction can begin before the Department grants the substantive permits, and all interested parties will have a full opportunity to weigh in" on the applications.[40]  Riverkeeper does not provide us any reason to revisit that holding here.

We therefore conclude that the Department has not violated any public notice obligation in approving Transco's Notice of Intent.

## III.

For the foregoing reasons, we will deny Riverkeeper's petition for review.

---

[38] 33 U.S.C. § 1341(a)(1).
[39] Pet'rs' Br. 50.
[40] *Riverkeeper III*, 903 F.3d at 76 (citing *Riverkeeper I*, 833 F.3d at 386-87).

10